**BEVERLY ENTERPRISES—MASSA-CHUSETTS, INC., d/b/a East Village Nursing & Rehabilitation Center, Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

No. 97–1672.

United States Court of Appeals, District of Columbia Circuit.

Argued Jan. 14, 1999.

Decided Feb. 2, 1999.

Howard M. Bloom argued the cause and filed the briefs for petitioner.

Charles Donnelly, Supervisory Attorney, National Labor Relations Board, argued the cause for respondent. With him on the brief were Linda Sher, Associate General Counsel, Aileen A. Armstrong, Deputy Associate General Counsel at the time the brief was filed, and Christopher W. Young, Attorney. John D. Burgoyne, Acting Deputy Associate General Counsel, entered an appearance.

Before: WALD, SILBERMAN and SENTELLE, Circuit Judges.

Opinion for the court filed by Circuit Judge SENTELLE.

SENTELLE, Circuit Judge:

Employer East Village Nursing & Rehabilitation Center ("East Village") petitions for review of an order of the National Labor Relations Board ("NLRB" or "Board") finding that it violated sections 8(a)(1) and (5) of the National Labor Relations Act, 29 U.S.C. § 158(a)(1), (5). East Village acknowledges that it refused to bargain with the union certified as the representative of licensed practical nurses ("LPNs") and registered nurses ("RNs") at the Center, but argues that certification was improper because the LPNs and RNs serve as "charge nurses" and are "supervisors" within the meaning of the National Labor Relations Act. East Village contends that the nurses are supervisors based on their independent disciplinary authority over the certified nursing assistants, yet cannot point to any instance in which that purported independent authority was exercised. While the exercise of supervisory authority is not always necessary to establish that authority is possessed, the repeated failure to exercise putative authority in circumstances where such exercise would be appropriate can be evidence that the authority is more imagined than real. Concluding that the Board was justified in viewing this as such a case, we deny the petition for review and grant the Board's cross-petition for enforcement of its order.

I.

East Village Nursing & Rehabilitation Center has four nursing units, each supervised by a Unit Coordinator who reports to the Director of Nursing. Each unit is at all times staffed with from one to three nurses (one or more of whom serve as "charge nurses") and from one to six certified nursing assistants ("CNAs"). The job description of a charge nurse includes, *inter alia*, independently disciplining CNAs. In numerous training seminars, charge nurses have been instructed in how to exercise their independent discipline over CNAs, and charge nurses have been criticized on their job evaluations for failing to exercise their authority over CNAs.

In 1995, the Service Employees International Union, Local 285 ("Union"), petitioned to represent all RNs and LPNs employed by East Village. East Village contended that representation was impermissible because

the nurses were statutory supervisors under § 2(11) of the National Labor Relations Act. The Regional Director issued a decision in 1995 concluding that the nurses were not supervisors. An election was held, in which there were insufficient votes in favor of representation, and the Union was not certified.

In November 1996, the Union again petitioned to represent the East Village nurses. East Village again objected that the nurses were supervisors under the Act, emphasizing that all RNs and LPNs sometimes act as "charge nurses," and as such have independent authority to discipline certified nursing assistants. However, the Regional Director issued a Decision and Direction of Election finding that the nurses were not "supervisors." The Director acknowledged that the nurses had been instructed that they have independent authority to discipline. However, she noted that in none of the seven recorded incidents of discipline of CNAs in the record had the charge nurse exercised independent authority—in practice, charge nurses always reported the incident to their shift supervisor, unit coordinator, or the Director of Nursing or Administrator. The Regional Director acknowledged East Village's contention that it is the existence and not the exercise of the power to discipline that is dispositive, but concluded that the giving of "paper authority" which is not exercised does not make an employee a supervisor. East Village argued that the nurses' failure to exercise their disciplinary authority was due to fear of retaliation by the CNAs, who had allegedly threatened them and vandalized their vehicles. However, the Director found the nurses' motives for refusing to follow East Village's directives to exercise independent discipline "irrelevant," noting that "[t]he fact remains that the charge nurses have not performed the supervisory duties the Employer has attempted to confer on them and the Employer has permitted this situation to go on." Accordingly, the Director directed election. East Village filed a Request for Review, which the Board denied, 2–1.

In the ensuing election, there were 22 votes in favor of representation and 5 against. The Union was certified. However,

East Village refused to bargain with the Union, leading to the present unfair labor charge alleging violations of sections 8(a)(1) and (5) of the National Labor Relations Act, 29 U.S.C. § 158(a)(1) and (5). After the unfair labor practice charge was filed, East Village requested reconsideration of the Board's decision not to grant review of the underlying issues. The NLRB denied East Village's reconsideration request in its final Decision and Order, issued on September 30, 1997, which ordered East Village to cease and desist from refusing to bargain with the Union. The employer petitions for review, and the Board seeks enforcement of its order.

## II.

█ Under Section 2(11) of the Act, the definition of "supervisor" includes an individual "having authority, in the interest of the employer, to . . . discipline other employees, . . . or effectively to recommend such action, if in connection with the foregoing the exercise of such authority is not of a merely routine or clerical nature, but requires the use of independent judgment." 29 U.S.C. § 152(11). The Board's findings regarding supervisory status are entitled to affirmance on review if supported by substantial evidence on the record as a whole. *Passaic Daily News v. NLRB,* 736 F.2d 1543, 1550 (D.C.Cir.1984). The burden of proving supervisory status rests upon the party asserting it. *Beverly Enters.–Pennsylvania, Inc. v. NLRB,* 129 F.3d 1269 (D.C.Cir.1997).

█ In construing Section 2(11), the Board has often noted that it is the possession of supervisory authority and not its exercise which is critical. *See, e.g., Cherokee Heating and Air Conditioning Co.,* 280 NLRB 399, 404, 1986 WL 53926 (1986); *Sheet Metal Workers Local 85,* 273 NLRB 523, 526, 1984 WL 37056 (1984); *Hook Drugs, Inc.,* 191 NLRB 189, 191, 1971 WL 31885 (1971). At the same time, " 'theoretical [or] paper power will not suffice' to make an individual a supervisor." *Food Store Employees Union, Local 347 v. NLRB,* 422 F.2d 685, 690 (D.C.Cir.1969) (quoting *NLRB v. Security Guard Serv.,* 384 F.2d 143, 149 (5th Cir.1967)). *Accord NLRB v. Sayers Print-*

*ing Co.*, 453 F.2d 810, 813–15 (8th Cir.1971); *Sunset Nursing Homes, Inc.*, 224 NLRB 1271, 1272, 1976 WL 7150 (1976) ("[T]he mere use of a title or the giving of 'paper authority' which is not exercised does not make an employee a supervisor."); *Great Lakes Towing Co.*, 168 NLRB 695, 700, 1967 WL 18998 (1967). Appellant urges that these two principles are in such tension that their coexistence is unreasonable and invites arbitrariness. We do not agree.

 Supervisory status determinations carry important consequences for the workers whose status is in question. Section 2(3) of the National Labor Relations Act, 29 U.S.C. § 152(3), excludes from the definition of the term "employee" "any individual employed as a supervisor," and, under Section 14(a) of the Act, 29 U.S.C. § 164(a), an employer cannot be required to bargain about the working conditions of supervisors. Thus when a worker is found to be a "supervisor" within the meaning of the Act, she is excluded from the NLRB's collective bargaining protections. *VIP Health Servs., Inc. v. NLRB*, 164 F.3d 644, 644, 1999 WL 7831, *4 (D.C.Cir.1999). In light of this, the Board must guard against construing supervisory status too broadly to avoid unnecessarily stripping workers of their organizational rights. *See Williamson Piggly Wiggly v. NLRB*, 827 F.2d 1098, 1100 (6th Cir.1987). Because of the serious consequences of an erroneous determination of supervisory status, particular caution is warranted before concluding that a worker is a supervisor despite the fact that the purported supervisory authority has not been exercised. In some cases, such a conclusion is no doubt appropriate. For example, in a given situation, the failure to exercise supervisory authority may indicate only that circumstances have not warranted such exercise. In such a case, it may be quite possible to establish that real authority is possessed, despite the lack of exercise. In fact, a supervisor's lack of occasion to exercise authority may itself indicate that that authority is very strong indeed. But absent exercise, there must be other affirmative indications of authority. Statements by management purporting to confer authority do not alone suffice. *See Chevron, U.S.A., Inc.*, 309 NLRB 59, 69, 1992 WL

280497 (1992) (no weight given "job descriptions that attribute supervisory authority where there is no independent evidence of its possession or exercise"); *Advanced Mining Group*, 260 NLRB 486, 1982 WL 24261 (1982) ("What is relevant is the actual authority possessed and not the conclusory assertions of a company's officials."). For example, in *Oil, Chemical and Atomic Workers Int'l Union, AFL–CIO v. NLRB*, 445 F.2d 237 (D.C.Cir.1971) ("*OCAW*"), this court upheld the Board's conclusion that "senior operators" were not supervisors, despite notices and postings by the employer that the senior operators were to supervise the personnel on their shift. We noted that "beyond the statements or directives themselves, what the statute requires is evidence of actual supervisory authority visibly translated into tangible examples demonstrating the existence of such authority." *Id.* at 243.

 Such "tangible examples" evidencing authority are lacking here. The record reveals that in multiple training sessions, and on their performance evaluations, the nurses were encouraged by management to "independently discipline" certified nursing assistants. Yet the record also reveals seven recorded occasions on which the nurses were involved in disciplinary incidents involving certified nursing assistants. On each of these seven occasions, the nurse involved reported the incident to her supervisors rather than independently disciplining the CNA. Accordingly, the Board concluded that the employer's efforts to communicate to the nurses that they possessed independent disciplinary authority did not "demonstrate supervisory authority in the absence of evidence that [the nurses] have any role in discipline beyond a reporting function." *Cf. Nymed, Inc.*, 320 NLRB 806, 812, 1996 WL 48265 (1996); *Passavant Health Ctr.*, 284 NLRB 887, 889, 1987 WL 89767 (1987).

Appellant argues, however, that the Board erred in failing to adequately consider *why* the nurses did not exercise the independent authority they purportedly possessed. In particular, appellant claims that the Board did not give sufficient weight to the testimony of several nurses that they had been

threatened by CNAs, that their vehicles had been vandalized, and that they feared retaliation by CNAs if they exercised their disciplinary authority. But even if accurate, appellant's explanation for the nurses' failure to exercise their authority is beside the point. The Board was not charged with determining whether management desired the nurses to be supervisors. Nor was it charged with determining whether the nurses would have acted as supervisors but for some intervening factor. The Board was required to decide whether the nurses *were* supervisors, and the consistent failure to exercise putative disciplinary authority despite the opportunity to do so was certainly an appropriate factor for the Board to consider in making its decision, whatever the reason for that failure.

Indeed, under the approach appellant advocates, an employer could effectively disqualify employees from a bargaining unit by granting them paper authority that they will be too intimidated to exercise. This possibility would be particularly troublesome where, as here, much of the evidence of conferred authority is based on management actions which occurred when a union campaign was in progress or on the horizon. *See OCAW,* 445 F.2d at 173 ("In [an atmosphere prior to any union campaign], untainted by live controversies over the statutory status of any particular group of employees, management's statements conferring responsibilities and allocating duties are likely to be more reliable than similar statements made in the context of union conflict when directives are often addressed as much to the Board as they are to the company's personnel.").

East Village may well have had every intention that the charge nurses assume true supervisory roles. Nonetheless, whatever their intention, East Village's management failed to take adequate measures to ensure that the nurses' authority would materialize in practice. Appellant acknowledges that it did not "discipline" the nurses for not exercising their supervisory authority, and did not "discipline" CNAs for retaliatory conduct, but argues the lack of formal disciplinary procedures in no way indicates that East Village acquiesced in the charge nurses' failure to exercise their supervisory roles. In-

deed, East Village asserts that, far from permitting this situation, it strove to correct it through unfavorable reviews on nurses' evaluations and continuing encouragement to exercise disciplinary authority. Without purporting to suggest what would have been an appropriate management strategy, we note only that the strategy employed, however well-intentioned, was ineffectual. The record does indicate that at training time and evaluation time, East Village enthusiastically championed the charge nurses' supervisory authority. But each time an incident calling for discipline of a CNA occurred, the charge nurses failed to act independently, and other supervisory and management personnel consistently stepped in and handled the discipline. Furthermore, even to the degree that it suggests supervisory authority, *but see VIP Health Servs.,* 164 F.3d at 649, 1999 WL 7831 at *6, there is no evidence that there are any times when no shift or unit supervisors are present. In short, East Village has apparently structured its nursing staff in such a way that the charge nurses, for whatever reason, do not meaningfully possess the purported authority they have been given. If the nurses refuse to exercise the authority management intended due to fear of the CNAs, it is a problem for management to correct. It is not, however, a reason for the Board or this court to impute to the nurses an authority which they do not in fact possess. In the circumstances of this case, the Board was justified in concluding that the nurses' authority is not an actuality, albeit undemonstrated, but is instead a speculative possibility, which absent demonstration, is simply "paper power."

### Conclusion

Because the Board's conclusion that the East Village nurses are not supervisors was supported by substantial evidence on the record as a whole, East Village's refusal to bargain was unjustified. Accordingly, we deny appellant's petition for review, and grant the Board's cross-petition for enforcement of its order.