ALOIS BOX CO., INC., Petitioner,

v.

NATIONAL LABOR RELATIONS BOARD, Respondent.

No. 99–1340.

United States Court of Appeals, District of Columbia Circuit.

Argued April 14, 2000.

Decided June 27, 2000.

Edward B. Miller argued the cause and filed the briefs for petitioner.

David A. Fleischer, Senior Attorney, National Labor Relations Board, argued the cause for respondent. With him on the brief were Leonard R. Page, General Counsel, Linda R. Sher, Associate General Counsel, and Aileen A. Armstrong, Deputy Associate General Counsel. Frederick Havard, Supervisory Attorney, entered an appearance.

Before: GINSBURG, HENDERSON and ROGERS, Circuit Judges.

Opinion for the Court filed by Circuit Judge ROGERS.

Concurring opinion filed by Circuit Judge HENDERSON.

ROGERS, Circuit Judge:

The Alois Box Company petitions the court for review of a National Labor Relations Board order finding that the company violated §§ 8(a)(1) and (5) of the National Labor Relations Act, *see* 29 U.S.C. § 158(a)(1), (5) (1994), for refusing to bargain with Graphic Communications Union Local 415–S, AFL–CIO at the company's factory in Illinois. The company does not deny that it refused to bargain but contends that the union was never properly certified because three ballots were improperly excluded from the election tally. In addition, the company contends that the Board's grant of summary judgment was inappropriate, and contrary to Board Rule 102.24, because the company's response to the rule to show cause indicated that a genuine issue for hearing may exist. Because there is substantial evidence to support the Board's finding with regard to one of the three invalidated ballots and the company forfeited its right to challenge the Board's disposition of a second ballot, even if the Board's finding with regard to the third ballot is unsupported by substantial evidence, the result of the election would not change. Accordingly, because there are no legally significant factual issues as would preclude summary judgment, we deny the petition and grant the Board's cross-application for enforcement.

## I.

On November 12, 1997, a representation election was conducted by the Board in which ballots were to be cast by members of the bargaining unit, defined as "[a]ll full-time and regular part-time production, maintenance and shipping employees employed by the Employer at its facility . . .

but excluding all other employees, office clericals, guards and supervisors as defined by the Act." The initial tally of the 33 opened ballots was 19 in favor of the union, 14 opposed to the union. Aside from the 33 opened ballots, seven unopened ballots were challenged by the union on the ground that they were cast by employees who were ineligible to vote in the representation election.

A hearing officer, considering six of the seven challenged ballots,[1] found in favor of the union with respect to four of the six ballots—those cast by Jeff Miller, Manuel Garcia, Julius Rimdzuis, and Mato Brasic—on the grounds that Miller and Garcia are supervisors, that Rimdzuis lacks a community of interest with the bargaining unit, and that Brasic receives special privileges as the brother of the plant manager. The company filed exceptions to the hearing officer's recommendations, and the Board reversed as to Garcia, but otherwise affirmed the hearing officer's recommendations. As a result, four of the seven challenged ballots were determined to be ineligible. With the four ineligible ballots, the total number of valid ballots was reduced from 40 to 36, with 19 valid and counted for the union, 14 valid and counted against the union, and three—Garcia and the two employees the union challenged unsuccessfully before the hearing officer—uncounted. Because the three unopened ballots would not be determinative of the result of the election, the Board declined to order them opened and counted, and issued a certification of representation to the union. *See Alois Box Co., Inc.,* 326 N.L.R.B. No. 110 (1998) (with one member dissenting on the finding that Miller was a supervisor and another member dissenting on the finding that Rimdzuis was ineligible to vote).

Seven months later, the union filed an unfair labor practice charge alleging that

---

1. The parties stipulated that one of the seven challenged ballots was filed by an ineligible former employee.

the company had refused to bargain collectively with the union. In its answer, the company admitted its refusal to bargain in order to challenge the certification, alleging that the union was not the representative of a majority of employees in the bargaining unit. The company asserted that facts would be introduced at a hearing to show that Miller was not a supervisor because in making work assignments he did not exercise independent judgment, as clarified by recent Board and court precedent, and that Rimdzuis was a regular part-time employee who shared a community of interest with the unit employees. The Board's General Counsel moved for summary judgment on the grounds that the company sought to relitigate eligibility determinations that were "exhaustively" examined in the representation case, and that the company's "technical refusal to bargain" was sufficient to find that the company had violated §§ 8(a)(1) and (5) of the Act, under *Skandia Foods, Inc.*, 301 N.L.R.B. No. 35 (1991).

In response to the notice to show cause why summary judgment should not be granted, the company argued that the Board had erroneously adopted the hearing officer's bare-bones conclusion that Miller was a supervisor based on work assignments that were never identified and independent judgment that was never described, and that more recent cases demonstrated the findings were insufficient to show supervisory status.[2] With regard to Rimdzuis, the company argued the Board's error was clear from *Time Warner Cable v. NLRB*, 160 F.3d 1 (D.C.Cir.1998). The company also argued that Board Rule § 102.24 did not require it to set forth precise facts through affidavits or exhibits in order to defeat a motion for summary judgment, as long as it was clear from the face of the answer that a genuine issue of fact exists. The Board granted summary judgment, ruling that all representation issues were or could have been litigated in the prior representation proceeding, and noting that the company neither offered to present at a hearing any newly discovered and previously unavailable evidence nor alleged any special circumstances requiring the Board to reexamine its earlier decision. *See Alois Box Co.*, 328 N.L.R.B. No. 134 (1999).

## II.

In petitioning for review of the Board's certification of the union as the exclusive bargaining representative of all "full time and regular part-time production, maintenance and shipping employees," the company's contentions that the Board erred in disqualifying three ballots hinge largely on its interpretation of the evidence in the light most favorable to it, and with regard to Miller, on its reading of Board and court precedent regarding supervisors. If the Board is affirmed with regard to at least two of the three unopened ballots at issue here (Miller, Rindzuis, and Brasic), the outcome of the election remains unchanged regardless of whether the remaining unopened ballots were voted against the union. The Board's factual findings are entitled to be affirmed if supported by substantial evidence on the record as a whole, *see Passaic Daily News v. NLRB*, 736 F.2d 1543, 1550 (D.C.Cir.1984), and with regard to the determination of supervisory status, given the large measure of informed discretion involved and the Board's corresponding expertise in this area, the substantial evidence test "takes on special significance." *Oil, Chemical & Atomic Workers Int'l Union v. NLRB*, 445 F.2d 237, 241 (D.C.Cir.1971).

We address first, the company's challenge to the Board's determination that Miller was a supervisor; second, the company's challenge to the Board's finding that Rimdzuis lacked community of inter-

---

**2.** The company relied on *Custom Mattress Manufacturing, Inc.*, 327 N.L.R.B. No. 30 (1998); *Ryder Truck Rental, Inc.*, 326 N.L.R.B. No. 149 (1998); *Board of Social Ministry*, 327 N.L.R.B. No. 57 (1998), as well as *VIP Health Services, Inc. v. NLRB*, 164 F.3d 644 (D.C.Cir.1999), and *Cooper/T. Smith, Inc. v. NLRB*, 177 F.3d 1259 (11th Cir.1999).

est with members of the bargaining unit; and third, the company's attempt to challenge the Board's determination that Brasic received special work-related benefits as a result of being the brother of the plant manager.

### A.

■ The company maintains that there is not substantial evidence to support the Board's determination that Jeff Miller was a supervisor and, thus, was ineligible to vote in the representation election. Describing Miller as a "maintenance man," the company maintains that he is nothing more than a non-supervisory employee of the unit. The company points to the evidence that Miller was stripped of his supervisory status in 1995 due to unsatisfactory performance, that he accepted a non-supervisory position instead, that he eats his lunch in the maintenance area, that he punches a time clock, and that his main area of operation is in the maintenance shop and out on the floor fixing machines. Although acknowledging that Miller "has been assigned the job of reporting early in the morning and handing out some work orders which Brasic, the Plant Manager, has assigned for that day," the company contends that Miller exercised no independent judgment in carrying out such tasks and that absent such evidence he cannot be a supervisor. Yet there was evidence that Miller independently assigns work to employees, changes the plant manager's assignments, instructs employees to cease work, and has been held out by the company as a supervisor even after he was officially stripped of supervisory authority in 1995, causing some employees to regard Miller as having supervisory authority. Moreover, the company's failure to call Miller as a witness, and its failure to explain its decision, warrants the inference

that his testimony would have been unfavorable to the company. *See Cadbury Beverages, Inc. v. NLRB*, 160 F.3d 24, 29 (D.C.Cir.1998); *UAW v. NLRB*, 459 F.2d 1329, 1336 (D.C.Cir.1972). Given the evidence to support the Board's determination that Miller is a supervisor, the underlying issue is whether, as the company contends, recent Board and judicial precedent require that more be shown.

■ Consistent with the definition of "supervisor" in the Act,[3] a key consideration to the determination of supervisory status is whether the employee exercises "independent judgment" in assigning work or performing other tasks set forth in the definition. *See, e.g., Micro Pacific Dev. Inc., v. NLRB*, 178 F.3d 1325, 1330–31 (D.C.Cir.1999). Necessarily an ambiguous term in contrast to authority of a "routine or clerical nature," the Board is to be given room to apply the term "independent judgment." *VIP Health Servs., Inc. v. NLRB*, 164 F.3d 644, 647 (D.C.Cir.1999). But in concluding an employee exercises such judgment the Board must be able to answer three questions in the affirmative: (1) does the employee have authority to engage in one of the twelve listed activities; (2) does the exercise of that authority require the use of independent judgment; and (3) does the employee hold the authority in the interests of the employer. *See NLRB v. Health Care & Retirement Corp.*, 511 U.S. 571, 573–74, 114 S.Ct. 1778, 128 L.Ed.2d 586 (1994). With these considerations in mind, however, the court in *Beverly Enter.-Massachusetts, Inc. v. NLRB*, 165 F.3d 960, 962 (D.C.Cir.1999), cautioned that "the Board must guard against construing supervisory status too broadly to avoid unnecessarily stripping workers of their organizational rights." *Id.* at 962. Noting that in construing § 2(11) of the

---

**3.** Section 2(11) of the Act defines a "supervisor" as:

> any individual having authority, in the interest of the employer, to hire, transfer, suspend, lay off, recall, promote, discharge, assign, reward, or discipline other employ-

ees, or responsibly to direct them, ... if ... the exercise of such authority is not of a merely routine ... nature, but requires the use of independent judgment.

29 U.S.C. § 152(11).

Act, the Board has ruled that it is the possession of supervisory authority and not its exercise that is critical, *see id.*, the court rejected the notion that mere job titles or management's desires could be determinative, and required in the absence of the exercise of supervisory authority that there be tangible examples demonstrating the existence of such authority. *See id.* at 962–63.

Notwithstanding the evidence of Miller's exercise of supervisory authority with regard to other unit employees in the company's interest that plant operations be maintained throughout the workday, the company maintains that recent precedent makes clear that facts of the kind relied on by the Board are inadequate to establish supervisory status. The company points to the Board's decision in *Custom Mattress Manufacturing, Inc.*, 327 NLRB No. 30 (1998), ruling that supervisory status had not been shown where the employee worked side by side with other employees and was responsible for ensuring that work was performed according to a schedule prepared by the plant manager and even tested job applicants and received extra pay for his services. The company considers *Ryder Truck Rental, Inc.*, 326 NLRB No. 149 (1998), to offer an even closer parallel to Miller's situation, for in *Ryder* the employee followed plant management's job assignments unless presented with an unanticipated job, in which event he selected another employee to do the job based on management's assessment of that employee's skills, and the Board stated that "[a]ssignment of work by area of expertise does not involve the exercise of independent judgment when carried out according to the instructions of management." *Id.* The company maintains as well, citing *Byers Engineering Corp.*, 324 NLRB 740, 741 (1997), that previous Board precedent indicated that "independent judgment" in the context of assigning work requires more than merely equalizing employees' work.

But these and other cases relied on by the company are easily distinguishable, and do not reflect a stricter standard than the one the Board applied here. For example, in *Custom Mattress*, there was no finding that the employee could deviate from the work assignment schedule or that, as here, the management's schedule only covered a part of the day. In *Ryder Truck* and *Byers*, the employee did not make his own assessments of employees' skills or expertise but followed management's evaluations, in contrast with Miller's situation where there is no evidence he simply followed management's instructions. The machinery in Miller's unit was complicated and, as the company acknowledges in its briefs, not all of the unit employees knew how to operate all of the machines, thus requiring Miller to evaluate employee skills in making assignments. *See Cooper/T. Smith, Inc. v. NLRB*, 177 F.3d 1259 (11th Cir.1999) (citing *Exxon Pipeline Co. v. NLRB*, 596 F.2d 704 (5th Cir.1979)). In *Board of Social Ministry*, 327 N.L.R.B. No. 57 (1998), other nonsupervisory employees at the company did not have the same authority over the employees as Miller did when he moved employees from one machine to another on a daily basis. Similarly, in *VIP Health Services, Inc.*, 164 F.3d at 649, the employees carried out plans formulated primarily by others, and did what was routine because it required only common sense to know what needed to be done, a different situation from assigning employees to work on complicated machines. So, too, in *Mississippi Power & Light Co.*, 328 NLRB No. 146, 1999 WL 551405 (N.L.R.B. July 26, 1999), the Board relied on evidence, unlike that in Miller's case, that the employees followed specific instructions or procedures that management had designed and had to check with higher authority before performing planned work. *See id.* at *4–5.

Contrary to the company's contention, cases such as *Cooper/T. Smith*, and *NLRB v. Hilliard Development Corp.*, 187 F.3d 133 (1st Cir.1999), do not indicate that the Board is now applying a stricter standard,

but simply reflect differences in the record evidence. In *Cooper*, the employee's decision about the number of tug boats needed to perform a job was based on a schedule set by management, and there was no evidence that the employee selected other employees to do the job based on an independent evaluation about the individual employees' skills. *See Cooper*, 177 F.3d at 1265. In *Hilliard*, there was evidence that the assignment of work rarely changed, any assignment power was largely circumscribed, and in that context the matching of skills to requirements was essentially routine. *See Hilliard*, 187 F.3d at 145. Indeed, much of the company's challenge goes to the Board's characterization of the nature of the work actions that Miller took—the company maintaining that what he did was merely routine, assigning work that the plant manager had laid out. While the court will reject the Board's determination of supervisory status when the factual findings point in another direction, *see, e.g., Micro Pacific Dev. Inc. v. NLRB*, 178 F.3d 1325, 1330–31 (D.C.Cir. 1999), the hearing officer's findings here do not support the company's position. The hearing officer credited Juan Duran's testimony that Miller moved him from machine to machine, that employees went to Miller to receive new assignments, and that Miller had the authority to determine the acceptability of work performed by certain employees in the unit. In addition, the hearing officer was persuaded that the company led unit members to believe that Miller was a supervisor, citing testimony by Duran and Cirilo Garcia that the plant manager had told employees to follow Miller's instructions. The hearing officer also pointed to evidence that Miller made adjustments to the work assignments made initially by the plant manager. Based on this and other evidence, the hearing officer's finding that Miller used independent judgment in performing supervisory duties is supported by substantial evidence.

We do not intend to suggest, however, that the evidence of Miller's supervisory status is more than barely sufficient. In this regard, the company correctly notes that the cases on which it relies provide a fuller record on which to make a determination of supervisory status. The evidence to show that Miller is aligned with management, and thus outside of the bargaining unit, is thin. But two considerations lead us to reject the company's challenge to the Board's determination that Miller is a supervisor. In large part, the difficulty for the company's position arises from the fact that it did not call Miller as a witness, nor explain its failure to do so, giving rise to an inference that his testimony would have been unfavorable to the company. When the company contends that the Board is now applying a stricter standard for supervisory status, the company essentially views the evidence, or lack thereof, most favorably to its position. In relying on *Hilliard*, and *Precision Fabricators, Inc. v. NLRB*, 204 F.2d 567, 568 (2d Cir. 1953), the company maintains that the routine matching of employee skills with a task betrays no assignment function that involves independent judgment. Yet in the absence of Miller's testimony or other evidence that would somehow erode or overcome the evidence that the plant manager's schedule covered only a part of the day and that Miller assigned work based on his own evaluations of the employees' skills and not simply in accordance with management's evaluations, the Board was entitled to rely on the testimony of the company's employees that the hearing officer credited regarding Miller's functions and responsibilities. *See Precision Fabricators*, 204 F.2d at 569. In addition, of critical significance is the evidence that the employees regarded Miller as a supervisor consistent with the plant manager's instructions. *See Micro Pacific Dev.*, 178 F.3d at 1332. Again, the company was in a position to clarify the record but failed to call Miller, thereby triggering the adverse inference the court has recognized before that can provide a sufficient evidentiary basis. *See Cadbury Beverages*, 160 F.3d at 29; *UAW*, 459 F.2d at 1336. While it is

undoubtedly true that the company is confronted with the somewhat unusual circumstance of a former supervisor continuing to function in critical respects as a supervisor making work assignments and evaluating employees' skills in making such assignments, the warning in *Beverly Enterprises* that titles and management's desires are not dispositive of supervisory status is no less applicable when management seeks to deny supervisory status based in part on the absence of such a title and the absence of evidence it could have presented.

Accordingly, having failed to show either a change in the law or the lack of substantial evidence to support the Board's determination that Miller is a supervisor, the company fails to gain another vote against the union.

### B.

In challenging the Board's determination that Rimdzuis does not have a community of interest with unit employees, and thus is not a regular part time employee, the company persuasively contends that Rimdzuis "regularly perform[s] duties similar to those performed by unit employees for sufficient periods of time to demonstrate that [he] ha[s] a substantial interest in working conditions in the unit." *Martin Enters., Inc.,* 325 N.L.R.B. 714 (1998). But we need not decide this question because even were the company to gain a vote against the union from Rimdzuis' ballot, it needs at least two votes to change the election result, and the company has forfeited its right to challenge the Board's decision that Mato Brasic was ineligible to vote.

### C.

■ The company contends that there is not substantial evidence in the record to support the Board's exclusion of Mato Brasic from the bargaining unit, and hence his ballot should have been counted. The Board responds that the company is precluded from challenging the Board's disposition of Brasic's ballot in the court by not raising it in the unfair labor practice proceeding, and, alternatively, that the Board's decision in the representation proceeding excluding Brasic from the bargaining unit is supported by substantial evidence in the record. We do not reach the merits of the company's contention, however, because we agree with the Board that the company has forfeited its right to challenge Brasic's exclusion in this court.

Under § 10(e) of the Act, any objection not raised before the Board cannot be raised on appeal from the Board's decision absent "extraordinary circumstances." 29 U.S.C. § 160(e).[4] As the court explained in *The Wackenhut Corp. v. NLRB,* 178 F.3d 543, 548 (D.C.Cir.1999), "[r]epresentation proceedings before the Board are not subject to direct judicial review because they do not result in a final agency order," and "[a]n employer seeking review of the record in a representation proceeding must refuse to bargain with the union, [and] suffer an unfair labor practice charge," the Board's disposition of which is appealable to the court of appeals. *Id.* at 548; *see also Family Servs. Agency v. NLRB,* 163 F.3d 1369, 1380 (D.C.Cir.1999); *Thomas-Davis Med. Ctrs., P.C., v. NLRB,* 157 F.3d 909, 911 (D.C.Cir.1998). Although the company did prompt an unfair labor practice charge by its technical refusal to bargain, it did not challenge in the unfair labor practice proceeding the Board's earlier disqualification of Brasic's ballot. The record reflects that the company made no reference to Brasic in its answer to the unfair labor practice charge or its reply to the order to show cause why summary judgment should not be granted

---

**4.** Section 10(e) of the Act provides in pertinent part that:

no objection that has not been urged before the Board ... shall be considered by the court, unless the failure ... shall be excused because of extraordinary circumstances.

29 U.S.C. § 160(e).

on that charge. Instead, the company maintains on appeal that once the unfair labor practice charge was made, it was unnecessary to "provide yet another detailed notice" to the Board of the issues already presented to the Board in the representation hearing.

However, the company cites no authority for its position, and both the Second and Ninth Circuits have held to the contrary. *See NLRB v. Star Color Plate Serv.*, 843 F.2d 1507, 1510 n. 3 (2d Cir.1988); *NLRB v. Best Prods. Co.*, 765 F.2d 903, 910 (9th Cir.1985). The company distinguishes the Second Circuit's case on the basis that in *Star Color*, the issue in question was first presented to the court in the reply brief, ignoring the fact that the Second Circuit made clear that was an independent alternative holding to its holding that, by failing to raise the issue before the Board in the unfair labor practice proceeding, the issue regarding the Board's decision in the representation proceeding could not be raised in the court on appeal from the unfair labor practice decision. *See Star Color*, 843 F.2d at 1510, n. 3. Neither the Board nor the employer cites or discusses *Best Products* setting forth the Ninth Circuit's rationale that issues can be abandoned and that the Board is entitled to know in the unfair labor practice proceeding what objections to its representation decision are being pursued. *See Best Prods.*, 765 F.2d at 903. Thus, in *Best Products*, the Ninth Circuit concluded that while it would not require a party to give in the unfair labor practice proceeding "a full-blown, yet necessarily unavailing, reargument of an issue that has already been decided against that party in a representation hearing," a party must at least give "[a] firm indication to the Board of the objecting party's non-abandonment of the issue ... to preserve it for ... review [by the court on appeal from the unfair labor practice proceeding under section 10(e) ]." *Id.* at 910.

Responding to the Board's position that the company's challenge to Brasic's exclusion from the bargaining unit is precluded under § 10(e), the company states in its Reply Brief that "[i]t is certainly not necessary for the respondent, once the refusal to bargain charge has been made, to provide yet *another detailed notice* of the issues which have already been presented to the Board in the representation cases." (emphasis added). We agree, but here the company gave no notice whatsoever to the Board in the unfair labor practice proceeding that it was continuing to contest the Board's disposition of Brasic's ballot in the representation proceeding.

The company's position would have the court treat the Board's decision in the representation proceeding as a final order, contrary to § 10 of the Act and Supreme Court precedent that a Board certification is not a final order under § 10(f), *see American Fed'n of Labor v. NLRB*, 308 U.S. 401, 409, 60 S.Ct. 300, 84 L.Ed. 347 (1940). Neither Congress nor the Supreme Court has countenanced such avoidance of the unfair labor practice proceeding in a technical refusal-to-bargain case. Because the company did not raise this issue in the unfair labor practice proceeding, the Board was entitled to treat the issue as abandoned. *See Best Prods.*, 765 F.2d at 903. Although the company maintains that because it did not seek a hearing with regard to its challenge to the Board's disposition of Brasic's ballot in the representation decision, it was "unnecessary" to provide the Board with "another detailed notice" of the company's contention about Brasic's inclusion in the bargaining unit, the company was obligated to proceed in the unfair labor practice proceeding with the understanding that the Board's representation decision was not a final appealable order under the Act.[5] Unless the company's objections were noted in the

---

5. In any event, an employer will not necessarily pursue all objections in the unfair labor practice proceeding that it raised in the representation proceeding, and the Board is entitled to know which objections are being pursued because its decision in the unfair labor practice proceeding is a final appealable order. *See Best Prods.*, 765 F.2d at 903.

unfair labor practice proceeding, the order appealed from would not respond to those objections and § 10(e) would bar their consideration by the court in reviewing the Board's unfair labor practice decision. *Cf. American Fed'n of Labor,* 308 U.S. at 409, 60 S.Ct. 300. While we have no occasion to decide what would provide sufficient notice in the unfair labor practice proceeding, *see, e.g., Best Prods.,* 765 F.2d at 909 (citing *NLRB v. Southwest Equip. Corp.,* 736 F.2d 1332 (9th Cir.1984), and *NLRB v. Giustina Bros. Lumber Co.,* 253 F.2d 371, 374 (9th Cir.1958)), absent any notice to the Board in the unfair labor practice proceeding, the company has forfeited its right to challenge the Board's disposition of Brasic's ballot in the representation proceeding.

### III.

Finally, the company contends that the Board erred in granting summary judgment because it was entitled to a hearing in the unfair labor practice proceeding, in accordance with the Board's rules. Section 102.24(b) of the Board Rules on motions provides that a motion for summary judgment may, in the Board's discretion, be denied "where the opposing party's pleadings, opposition and/or response indicate on their face that a genuine issue may exist." 29 C.F.R. § 102.24(b) (1999). The Rule states further that "[i]t is not required that either the opposition or the response be supported by affidavits or other documentary evidence showing that there is a genuine issue for hearing." *Id.* Because the company presented new cases affecting the Board's interpretation of supervisory status, the company maintains that a hearing was required. This contention is meritless.

The Board properly applied its "rule against relitigation," *Pittsburgh Plate Glass Co. v. NLRB,* 313 U.S. 146, 162, 61 S.Ct. 908, 85 L.Ed. 1251 (1941), in ruling that because the factual issues relating to the eligibility of Miller and Rimdzuis were litigated in the representation proceeding,

there were no genuine issues of material fact in the unfair labor proceeding. The company presented neither newly discovered evidence nor legal authority that was not readily distinguishable or that changed governing law. While the Board's rule does not require affidavits and documentary evidence to demonstrate that a factual issue exists, whether to grant a hearing lies in the Board's discretion and the company could not show an abuse of that discretion simply by asserting that the governing law had changed. Because the company had an opportunity to litigate all relevant issues of fact and only determinations of law remained, as set forth in the company's filings with the Board, an evidentiary hearing would have served no purpose. *See NLRB v. Mar Salle, Inc.* 425 F.2d 566, 572 (D.C.Cir.1969). The company submitted its legal arguments in its filings to the Board, and as noted in Part II(A), the cases relied upon by the company did not show a change in governing law. Thus, in the absence of any basis for the Board to reconsider its previous decision, the Board properly granted summary judgment. *See Sitka Sound Seafoods, Inc. v. NLRB,* 206 F.3d 1175, 1182–83 (D.C.Cir.2000); *Thomas–Davis Med. Ctrs., P.C. v. NLRB,* 157 F.3d 909, 912 (D.C.Cir.1998).

\* \* \* \* \*

Because we conclude that there is substantial evidence in the record to support the Board's finding that Miller was a supervisor and that the company forfeited its right to challenge the Board's disposition of Brasic's ballot, and, therefore, both were ineligible to vote in the representation election, the outcome of the election is unchanged even assuming the Board erred by excluding Rimdzuis' ballot. Because, further, the company failed to present legal authority indicating that the Board had changed its standard for determining supervisory status, or to claim to have newly discovered evidence, summary judgment was appropriate. Accordingly, we deny

the petition for review and grant the Board's cross-application for enforcement.

KAREN LeCRAFT HENDERSON, Circuit Judge concurring:

Although I agree with my colleagues that we need not resolve Rimdzuis's eligibility to vote, I write separately to emphasize the Board's clear error in sustaining the challenge to Rimdzuis's ballot on the basis that he was not a regular part-time employee. Rimdzuis was 78 years old at the time of the hearing and had then worked at the company for seven years. His duties include trouble-shooting, machine repair and procuring spare parts. Rimdzuis works approximately twenty hours a week but works more when his job demands it. Which days and hours he works, however, are largely within his discretion. Although he spends considerable time away from the plant, he generally works in the same area as all other mechanics, that is, the "mechanics crib" where the tools are stored. Joint Appendix (JA) 46. He earns a fixed weekly wage of $300, has never been given a raise and receives no overtime pay or fringe benefits.

The hearing officer seized on the differences between Rimdzuis's working conditions and those of other employees and determined the differences left Rimdzuis without sufficient connection to the bargaining unit, that is, without a "community of interest." JA 178. The Board, over the dissent of Member Hurtgen, adopted the hearing officer's recommendation and the reasoning therefor. Hurtgen relied on Rimdzuis's twenty hours of unit work weekly for seven years and determined that "[t]he fact that he schedules his own 20 hours does not detract from his regular part-time status." JA 171 n.4. Our precedent as well as the Board's precedent plainly support the dissent.

As we have often noted, the Board has established an inclusive eligibility formula designed to allow "optimum employee enfranchisement ... without enfranchising individuals with no real continuing interest in the terms and conditions of employment offered by the employer." *B B & L, Inc. v. NLRB*, 52 F.3d 366, 370 (D.C.Cir.1995) (quoting *Trump Taj Mahal*, 306 N.L.R.B. 294, 296 (1992)) (internal quotation marks omitted). In its case by case determination, the Board asks "whether the employee regularly performs duties similar to those performed by unit employees for sufficient periods of time to demonstrate that [he has] a substantial interest in the unit's working conditions." *Time Warner Cable v. NLRB*, 160 F.3d 1, 6 (D.C.Cir. 1998) (quoting *Martin Enters., Inc.*, 325 N.L.R.B. 714 (1998)) (internal quotation marks omitted). While noting that it occasionally considers other evidence, the Board has consistently held that the amount of time an employee spends performing unit work can be sufficient to demonstrate "substantial and continuing interest in the terms and conditions of employment." *Oxford Chemicals, Inc.*, 286 N.L.R.B. 187, 188 (1987). More important here, the Board in *Oxford* rejected resort to the community-of-interest analysis once the hour-inquiry has proven satisfactory:

> [W]e find that once this standard has been met, it is both unnecessary and inappropriate to evaluate other aspects of the [part-time[1]] employee's terms and conditions of employment in a kind of second tier community-of-interest analysis. That is, inclusion of a [part-time] employee within a particular unit does not depend on a showing of community-of-interest factors in addition to the regular performance of a substantial amount of unit work.

286 N.L.R.B. at 188 (footnote and internal citation omitted).

Rimdzuis undisputedly performs unit work for at least twenty hours a week.

---

**1.** The Board in *Oxford Chemicals* addresses "dual function" employees but notes that the same standard applies for determining eligibility of part-time employees. *See* 286 N.L.R.B. at 187; *see also Time Warner*, 160 F.3d at 6 n. 12.

This is sufficient "to demonstrate that [he has] a substantial interest in the unit's working conditions." *Time Warner Cable v. NLRB,* 160 F.3d at 6 (forty hours of unit work for only one month preceding election satisfies standard). I do not believe the flexibility of his work schedule removes him from the community of interest shared by the bargaining unit. *Cf. Leaders–Nameoki, Inc.,* 237 N.L.R.B. 1269, 1269 (1978) ("It is well established in department store cases that part-time employees who regularly work an average of 4 hours or more per week are considered to be eligible regular part-time employees ... even though they may work full-time for another employer or are free to reject work when offered."); *Henry Lee Co.,* 194 N.L.R.B. 1107, 1107 (1972) ("Where, as here, part-time employees are engaged in unit work for substantial periods each week, even though on an unscheduled basis, it is customary Board policy to include them in the unit as regular part-time employees."). Moreover, neither Rimdzuis's fixed wage nor his exclusion from certain fringe benefits negates the substantial interest he has in the working conditions he shares with others in the bargaining unit approximately twenty hours each week. Accordingly, I believe the Board clearly erred in disenfranchising Rimdzuis.