**BRUSCO TUG & BARGE CO., Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

No. 00–1183.

United States Court of Appeals, District of Columbia Circuit.

Argued Jan. 26, 2001.

Decided May 1, 2001.

Thomas M. Triplett argued the cause for petitioner. With him on the brief was Karen O'Kasey.

Christopher W. Young, Attorney, National Labor Relations Board, argued the cause for respondent. With him on the brief were Leonard R. Page, General Counsel, Aileen A. Armstrong, Deputy Associate General Counsel, and Margaret A. Gaines, Supervisory Attorney.

Before: WILLIAMS, RANDOLPH and TATEL, Circuit Judges.

Opinion for the Court filed by Circuit Judge TATEL.

TATEL, Circuit Judge:

Rejecting petitioner's argument that mates on its tugboats are supervisors within the meaning of the NLRA, the National Labor Relations Board found that petitioner, by interfering with its mates' right to organize, committed an unfair labor practice. Because the Board failed adequately to explain its decision, we deny enforcement and remand for further proceedings.

I

Section 8(a)(1) of the National Labor Relations Act prohibits employers from interfering with their employees' right to organize. 29 U.S.C. § 158(a)(1) (referring to the rights guaranteed in *id.* § 157). The Act's definition of protected "employee[s]" excludes "any individual employed as a supervisor." *Id.* § 152(3). A "supervisor" is:

any individual having authority, in the interest of the employer, to hire, transfer, suspend, lay off, recall, promote, discharge, assign, reward, or discipline other employees, or responsibly to direct them, or to adjust their grievances, or effectively to recommend such action, if in connection with the foregoing the exercise of such authority is not of a mere-

ly routine or clerical nature, but requires the use of independent judgment. *Id.* § 152(11).

Petitioner Brusco Tug & Barge Co. tows and transports cargo along the West Coast. Brusco tugs tow log, chip and sand barges, as well as target sleds for the United States Navy. Approximately twenty-five tugs operate out of Brusco's home port in Cathlamet, Washington, performing both inland and offshore jobs. Manned by a master (also called a captain) and one deckhand, inland tugs primarily perform day jobs on the Columbia River. Offshore tugs—the focus of this case—take thirty-day trips along the Pacific coast, ranging as far north as Vancouver and as far south as Mexico. Offshore crews include a master, a mate, an engineer and one (or sometimes two) deckhands.

While at sea, offshore crews typically work six-hour shifts assigned by the master. The master and a deckhand or engineer alternate shifts with the mate and the other crewmen. Some tasks require participation of the entire crew; for instance, all crewmen work together to tie a barge to the tugboat. While the master maneuvers the boat, the mate directs the crewmen on the deck, coordinating the passing of the lines. The mate also selects a crewman to board the barge and pass its towing bridle to crewmen on the tug.

In October 1999, while the International Organization of Masters, Mates, and Pilots was engaging in an organizing campaign at Brusco's home port, the company's owner, Bo Brusco, sent a letter to his masters and mates, stating that "masters and mates are management" and would be terminated if they engaged in any organizing activity. Claiming that the letter interfered with the masters' and mates' right to organize, the union filed an unfair labor practice charge.

Shortly thereafter, an NLRB hearing officer heard evidence in a different matter regarding Brusco—defining the collective bargaining unit for the purposes of the upcoming union election. *Brusco Tug & Barge Co. v. Int'l Org. of Masters, Mates, & Pilots*, No. 19–RC–13872 (Nov. 26, 1999). Over Brusco's objection, the officer ruled that mates should be included in the bargaining unit. Although recognizing that mates assign and direct other crewmen during tie-ups, he thought such actions required no independent judgment within the meaning of NLRA section 2(11) and were therefore not indicative of supervisory status. *Id.* at 6–7. He agreed with Brusco, however, that its masters were supervisors and therefore ineligible for inclusion in the bargaining unit. *Id.* at 6. A divided Board rejected Brusco's request for review of the hearing officer's determination.

A few months later, the Board addressed the union's still-pending charge that Bo Brusco's October 1999 letter amounted to an unfair labor practice. Not disputing that its letter interfered with the mates' ability to organize, Brusco renewed its argument that mates are statutory supervisors who lack the right to organize under the Act. Because the Board had already determined that Brusco's mates are employees within the meaning of the statute, it granted summary judgment against the company. *Brusco Tug & Barge Co.*, 330 N.L.R.B. No. 169 (April 11, 2000), 2000 WL 420616, at *3.

Insisting that its mates are supervisors, Brusco petitions for review. The company argues that its mates perform a wide range of supervisory tasks, and that the Board impermissibly departed from precedent in deeming them employees. The Board cross-applies for enforcement.

## II

■ "Because of its expertise, the Board necessarily has a large measure of informed discretion" in determining if a worker is a supervisor. *Passaic Daily News v. NLRB*, 736 F.2d 1543, 1550 (D.C.Cir.1984) (internal citation omitted). We will overturn the Board's finding that Brusco's mates are statutory employees only if it is contrary to law, inadequately reasoned, *see NLRB v. Health Care & Retirement Corp. of America*, 511 U.S. 571, 576, 114 S.Ct. 1778, 128 L.Ed.2d 586 (1994), or unsupported by substantial evidence, *Passaic Daily News*, 736 F.2d at 1550. In this circuit, moreover, the burden of proving supervisory status rests on the party that asserts it—here, Brusco. *See Beverly Enters.—Mass., Inc. v. NLRB*, 165 F.3d 960, 962 (D.C.Cir.1999). Unless Brusco demonstrates otherwise, the Board may thus presume that the mates are employees rather than supervisors.

■ Citing Board decisions finding tugboat captains and mates to be supervisors, Brusco argues that mates, as a category, may not be considered employees. We disagree. Because the issue of supervisory status is heavily fact-dependent and job duties vary, per se rules designating certain classes of jobs as always or never supervisory are generally inappropriate. *See Ky. River Comty. Care, Inc. v. NLRB*, 193 F.3d 444, 453 (6th Cir.1999), *cert. granted*, 530 U.S. 1304, 121 S.Ct. 27, 147 L.Ed.2d 1050 (2000). To meet its burden, therefore, Brusco must do more than cite other cases finding mates to be supervisors; it must prove that its mates actually perform one or more of the supervisory tasks listed in NLRA section 2(11), and that, in doing so, they use "independent judgment."

Brusco next relies on its "Responsible Carrier Operation Plan," a voluntary plan drafted as part of a safety program sponsored by the American Waterways Association. According to Brusco, because the plan provides that "in [the master's] absence, his relief, the mate, is the master," Pet'r Br. at 7, and because the hearing officer found that Brusco's masters were supervisors (because they use independent judgment in recommending transfer and promotion, as well as directing and assigning crewmen), its mates are also supervisors. Responding, the Board disputes not only that the plan's provisions give mates all authority granted to masters, but also that the plan, which the company intended only as a "guideline," delegates any authority at all. Hearing Tr. at 163, *Brusco Tug & Barge Co.*, No. 19–RC–13872. In any event, as the Board points out in its brief, paper authority alone does not make a worker a supervisor. *See Beverly Enters.*, 165 F.3d at 962 (citing *Food Store Employees Union, Local 347 v. NLRB*, 422 F.2d 685, 690 (D.C.Cir.1969)). Brusco must provide specific evidence that its mates actually exercise supervisory authority.

Before the hearing officer, Brusco proved that its mates perform two of the supervisory tasks listed in the statute: "assign[ing]" and "direct[ing]" crewmen during the tie-up. *Brusco Tug & Barge Co.*, No. 19–RC–13872, at 6. Because the hearing officer considered these tasks "routine" and not to "require[ ] the use of independent judgment," 29 U.S.C. § 152(11), however, he rejected Brusco's argument that the mates were statutory supervisors. *Brusco Tug & Barge Co.*, No. 19–RC–13872, at 6–7.

### Direction

The "direction of the 'work force' (two or possibly three [crewmen])," the hearing officer concluded, "hardly indicates the need for independent judgment beyond

that of an experienced hand." *Id.* In its brief before us, the Board elaborates: "[t]hose orders simply embody the mates' greater skills and experience, not managerial prerogatives." Resp't Br. at 17.

■ Brusco argues that the Board's decision conflicts with two cases in which the Board found tugboat workers to be supervisors based on their direction of crewmen: *Local 28, International Organization of Masters, Mates & Pilots,* 136 N.L.R.B. 1175 (1962), *enforced,* 321 F.2d 376 (D.C.Cir.1963), and *Bernhardt Bros. Tugboat Serv., Inc.,* 142 N.L.R.B. 851, *enforced,* 328 F.2d 757 (7th Cir.1963). Neither the hearing officer nor the Board addressed these two cases. While the Board need not address every precedent brought to its attention, it must provide an explanation where its decisions appear to be "on point." *See Gilbert v. NLRB,* 56 F.3d 1438, 1448 (D.C.Cir.1995); *see also id.* at 1445–48; *New England Grain & Feed Council v. ICC,* 598 F.2d 281, 285 (D.C.Cir.1979) ("While we are somewhat disturbed by the Commission's failure to explain why [an asserted precedent] is inapplicable here, that case is sufficiently distinguishable to assure that the Commission's oversight does not present a danger that it has arbitrarily departed from its own precedents.").

According to Brusco, *Local 28* and *Bernhardt Brothers* are both on point because, it claims, the direction given by the workers in the two cases is similar to that given by Brusco's mates. In *Local 28,* the Board found that mates' direction of crewmen "during locking and docking operations and in emergency situations ... involve[d] the exercise of independent judgment in the issuance of orders to deckhands and other deck employees." *Id.* at 1203. The direction provided by *Local 28's* mates—coordinating crewmen in passing lines, *id.* at 1192—does indeed

resemble the direction given by Brusco's mates. In its appellate brief, the Board attempts to distinguish *Local 28,* arguing that the mates in that case "had authority to issue orders to employees under pain of discipline." Resp't Br. at 24. This is no real distinction. As we read the hearing officer's findings, surely the crewmen on Brusco's tugs were not free to ignore mates' commands. Applying the definition of supervisor in NLRA section 2(11), the officer conceded that Brusco's mates "direct[ed]" crewmen, characterizing them as "boss[es] on deck." *Brusco Tug & Barge Co.,* No. 19–RC–13872, at 3, 6. He based his conclusion that Brusco's mates are statutory employees not on any suggestion that their direction is ineffective, but on his view that their actions require no independent judgment. Moreover, the *Local 28* Board expressly declined to base its determination that the mates were supervisors on their power to implement or recommend discipline. 136 N.L.R.B. at 1203. In that case, the authority to discipline came solely from the master: "[o]nly the master may enforce discipline on his boat." *Id.* at 1193.

Similarly, in *Bernhardt Brothers,* the hearing officer found that Bernhardt's pilots were supervisors because while on watch they "give[ ] orders to the crew in connection with the tow, the lookout, and the amount of power needed." 142 N.L.R.B. at 854. Although this, too, appears similar to Brusco's mates' responsibilities, the Board's brief makes no serious effort to distinguish *Bernhardt Brothers.* It asserts only that "all such cases are necessarily fact specific" and that there is no evidence that Brusco's mates' direction occurs while they are on watch, Resp't Br. at 21 n.5, giving no reason why direction on watch should be different from direction exercised at other times.

■ Because it is "axiomatic that an agency adjudication must either be consistent with prior adjudications or offer a reasoned basis for its departure from precedent," *ConAgra, Inc. v. NLRB*, 117 F.3d 1435, 1443 (D.C.Cir.1997) (internal citation omitted), we will remand for the Board to explain why its decision in this case is not inconsistent with *Local 28* and *Bernhardt Brothers* or, alternatively, to justify its apparent departures.

The Board's approach to the direction issue on remand will doubtless be affected by the Supreme Court's forthcoming decision in *NLRB v. Kentucky River Community Care, Inc.*, No 99–1815 (argued Feb. 21, 2001). There, the Sixth Circuit had rejected the Board's argument that nurses are not supervisors because their direction of nurse's aides arises "by virtue of their training and expertise, not because of their connection with 'management.'" *Ky. River Comty. Care, Inc. v. NLRB*, 193 F.3d at 453. The Supreme Court granted certiorari to consider the viability of the Board's expert employee approach, *NLRB v. Ky. River Comty. Care, Inc.*, 530 U.S. 1304, 121 S.Ct. 27, 147 L.Ed.2d 1050 (2000), precisely the theory the hearing officer relied on in finding that Brusco's mates' direction of crewmen involved no independent judgment.

### Assignment

■ The hearing officer found that the mates' assignment responsibilities were not indicative of supervisory status, stating: "[The mates] do assign work, but there is no indication it requires independent judgment. Their heaviest 'assignment' option seems to be selecting the more agile of two or three crewmen to go aboard a barge for the attachment of the towing bridle." *Brusco Tug & Barge Co.*, No. 19–RC–13872, at 6. The officer apparently based this conclusion on the testimony of one of Brusco's masters, who stated that both he and the mate assign crewmen during tie-up:

> Well, we have some deck hands around that—say they cook really well and they paint really well, but they've got a bum knee, so that's the deck hand you don't want to have running up and down the barge. So you keep him aboard to handle the lines on board. There's other deck hands that are very athletic, but they can't cook very well, so those are the ones you send up on the barge to do the work up there. You know, it's however the job fits them, that they get the job.

Hearing Tr. at 125, *Brusco Tug & Barge Co.*, No. 19–RC–13872. According to the Board, determining who has a "bum knee" or who cooks well is so simple that assignment based on these factors requires the exercise of no independent judgment: "[s]uch an obvious choice falls far short of the type of assignment of work based on an independent assessment of an employee's skills that would require the Board to find that a mate was a supervisor." Resp't Br. at 16.

Although this approach may well be permissible, we have some doubt about the Board's reasoning. Courts typically consider assignment based on assessment of a worker's skills to require independent judgment and, therefore, to be supervisory. *See Alois Box Co., Inc. v. NLRB*, 216 F.3d 69, 73–75 (D.C.Cir.2000) (upholding the Board's finding of supervisory status based in large part on the fact that the worker made "his own assessments of employees' skills or expertise"); *Cooper/T. Smith, Inc. v. NLRB*, 177 F.3d 1259, 1265 (11th Cir.1999); *American Diversified Foods v. NLRB*, 640 F.2d 893, 896 (7th Cir.1981); *NLRB v. Pilot Freight Carriers, Inc.* 558 F.2d 205, 209–210 (4th Cir. 1977). *But see Providence Alaska Med.*

*Ctr. v. NLRB,* 121 F.3d 548, 552 (9th Cir. 1997) (finding no independent judgment even though assessment of skills required). This appears to be the rule in at least one circuit even where, as here, the assessment rests on quite simple factors. *See Dynamic Mach. Co. v. NLRB,* 552 F.2d 1195, 1201 (7th Cir.1977) (noting that the Board found a worker a supervisor despite the fact that his assignment "options were limited and only a few factors needed to be taken into account in assigning work"); *NLRB v. Adam & Eve Cosmetics, Inc.,* 567 F.2d 723, 728–729 (7th Cir.1977) (overturning the Board's determination that a worker was not a supervisor, reasoning: "That the choices [the worker] had in assigning and directing work were severely circumscribed by the menial nature of the tasks performed and the limited skills of his coworkers ... does not mean that [he] was not called upon to use his own judgment in the course of the job."); *American Diversified Foods,* 640 F.2d at 896 (overturning ALJ determination that worker was not a supervisor, despite fact that assignment operated within "common sense limitations"). *But see NLRB v. Hilliard Development Corp.,* 187 F.3d 133, 146 (1st Cir.1999) (upholding the Board's determination that "although the nurses consider the needs of individual residents, the matching of skills to requirements was essentially routine.").

Brusco cites none of these cases, however, nor does it even seem to challenge this aspect of the Board's reasoning. Not only does Brusco devote only two sentences in the fact section of its brief to assignment (and these do no more than point out that Brusco's mates "assess the relative ability and physical capabilities of the deckhands" in assigning employees, Pet'r Br. at 9–10), but more important, Brusco failed to raise this issue before the Board. *See* 29 U.S.C. § 160(e) ("No objection that has not been urged before the Board ... shall be considered by the court"). We thus treat this issue as waived.

### III

We deny enforcement and remand to the Board for further proceedings consistent with this opinion.

*So ordered.*