# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued May 4, 2016             Decided July 1, 2016

No. 14-1281

OKLAHOMA GAS AND ELECTRIC COMPANY,
PETITIONER

v.

FEDERAL ENERGY REGULATORY COMMISSION,
RESPONDENT

SOUTHWESTERN PUBLIC SERVICE COMPANY, ET AL.,
INTERVENORS

———

On Petition for Review of Orders of the
Federal Energy Regulatory Commission

———

*Kenneth B. Driver* argued the cause for petitioner and supporting intervenors. With him on the joint briefs were *Stephen M. Spina*, *J. Daniel Skees*, *Barry S. Spector*, *Matthew J. Binette*, *Marvin T. Griff*, *Linda G. Stuntz*, *Ellen S. Young*, and *Stephen J. Videto*.

*Ross R. Fulton*, Federal Energy Regulatory Commission, argued the cause for respondent. With him on the brief were *Robert H. Solomon*, Solicitor, and *Lona T. Perry*, Deputy Solicitor. *Holly E. Cafer*, Attorney, entered an appearance.

*Michael R. Engleman* was on the brief for intervenors LS Power Transmission, LLC and LSP Transmission Holdings, LLC in support of respondent.

Before: KAVANAUGH, MILLETT and WILKINS, *Circuit Judges*.

Opinion for the Court filed by Circuit Judge WILKINS.

WILKINS, Circuit Judge:  Until recently, incumbent public utilities were free to include in their tariffs and agreements "the option to construct any new transmission facilities in their particular service areas, even if the proposal for new construction came from a third party." *S.C. Pub. Serv. Auth. v. FERC* (*South Carolina*), 762 F.3d 41, 72 (D.C. Cir. 2014) (per curiam).  In practice, the incumbent utilities were likely to exercise these "rights of first refusal" – a convention that had certain downsides according to the Federal Energy Regulatory Commission ("FERC" or "the Commission").  *See id.*  Fearful of deterring non-incumbents from proposing much-needed infrastructure reforms, discouraging competition within the industry, and potentially driving up the cost of rates charged for wholesale electricity service, the Commission ordered utilities to remove rights of first refusal from their existing tariffs and agreements.  *See id.* at 53, 72 (citing *Transmission Planning and Cost Allocation by Transmission Owning and Operating Public Utilities*, F.E.R.C. Stats. & Regs. ¶ 31,323, 76 Fed. Reg. 49,842 (2011)) [hereinafter Order No. 1000].

In *South Carolina*, we upheld the Commission's removal mandate.  762 F.3d at 71-81.  In so doing, we found it premature to address those petitioners' argument that FERC could not make them eliminate such provisions without violating the *Mobile-Sierra* doctrine.  *Id.* at 81.  Under

*Mobile-Sierra*, FERC must presume a contract rate for wholesale energy is just and reasonable and cannot set aside the rate unless it is contrary to the public interest. *See New England Power Generators Ass'n, Inc. v. FERC*, 707 F.3d 364, 366 (D.C. Cir. 2013) (citing *United Gas Pipe Line Co. v. Mobile Gas Serv. Corp.* (*Mobile*), 350 U.S. 332 (1956), and *Fed. Power Comm'n v. Sierra Pac. Power Co.* (*Sierra*), 350 U.S. 348 (1956)).

The Commission had reserved judgment on whether to apply this presumption to the rights of first refusal until evaluating the individual utilities' compliance filings, and therefore so did we. *South Carolina*, 762 F.3d at 81. Utility Petitioner Oklahoma Gas and Electric Company ("OG&E"), as well as several Intervenors (collectively, "Petitioners")[1], now petition for review from FERC's determination at the compliance stage. They urge that the Commission erred in concluding that *Mobile-Sierra* does not in fact protect their rights of first refusal contained in their Regional Transmission

---

[1] Intervening in support of OG&E are Southwestern Public Service Co., ITC Great Plains, LLC, Southwest Power Pool, Inc., Xcel Energy Services, Inc., Mid-Kansas Electric Co., LLC, and Sunflower Electric Power Corp. Intervening on behalf of FERC are Western Farmers Electric Cooperative, American Wind Energy Assoc., Duke-American Transmission Co., LLC, LS Power Transmission, LLC, and LSP Transmission Holdings, LLC.

Because it is different from the basis on which the Commission relied, *see K N Energy, Inc. v. FERC*, 968 F.2d 1295, 1303 & n.4 (D.C. Cir. 1992), we reject the alternative argument offered in separate briefing by Intervenors LSP Transmission Holding, LLC, and LS Power Transmission, LLC, *see* Intervenors for Resp. Br. at 19-26 (contending that Petitioners never established that they lost a contractual right as a result of the FERC orders under review).

Organization ("RTO") Membership Agreement. We hold that the Commission painted with a broader brush than necessary in applying potentially applicable Supreme Court precedent, but we deny the petition nonetheless because nothing in the *Mobile-Sierra* doctrine requires its extension to the anti-competitive rights of first refusal at issue here.

## I.

Petitioners are members of the RTO, Southwest Power Pool, Inc. ("Southwest Power Pool"), which provides transmission service to approximately 6 million households across portions of eight states. Although public utilities previously were vertically integrated – meaning they generated, transmitted, as well as distributed electricity – FERC in the past two decades has undertaken a number of structural reforms to unbundle the wholesale sale of power from its transmission, and to require utilities to provide open access to transmission lines in a nondiscriminatory fashion. *See Atlantic City Elec. Co. v. FERC*, 295 F.3d 1, 4 (D.C. Cir. 2002). One of these reforms encouraged the formation of RTOs like Southwest Power Pool. *See Morgan Stanley Capital Grp. Inc. v. Pub. Util. Dist. No. 1*, 554 U.S. 527, 536 (2008). RTOs are independent entities to which transmission-owning utilities have given operational control of their facilities. *See id.*; *Midwest ISO Transmission Owners v. FERC*, 373 F.3d 1361, 1364 (D.C. Cir. 2004) (explaining that placing control of transmission lines in RTOs was expected to promote competition and overcome inefficiencies).

Yet another reform was Order No. 1000, which required the removal from utilities' tariffs and agreements of federal rights of first refusal to construct transmission facilities in the regional transmission plan. *See* Order No. 1000, ¶ 268, 76 Fed. Reg. at 49,888. Tariffs are the mechanism through

which regulated utilities unilaterally set their rates and terms of service. *See Morgan Stanley*, 554 U.S. at 531; *South Carolina*, 762 F.3d at 71 n.5. In contrast, rates and terms can also be set by agreement with individual electricity purchasers, through bilateral contracts. *See Morgan Stanley*, 554 U.S. at 531 (citing 16 U.S.C. § 824d(c), (d)). Both tariffs and contracts must be filed with the Commission before they go into effect. *Id.* Not only rates, but also "any rule, regulation, practice, or contract affecting such rate[s]," 16 U.S.C. § 824e(a), are subject to FERC review to ensure they are "just and reasonable," *id.* § 824d(a). If found unjust or unreasonable, FERC may replace the unlawful rate, practice, or contract with a lawful one. *See id.* § 824e(a); *Morgan Stanley*, 554 U.S. at 532. In *South Carolina*, we held that the Commission properly exercised its authority under the Federal Power Act ("FPA") to regulate the rights of first refusal as a practice affecting a rate. 762 F.3d at 76; *see also id.* at 76-81 (finding FERC supported its conclusion that the rights were unjust or unreasonable with substantial evidence, and that the ban on rights of first refusal was not otherwise arbitrary or capricious on its face).

At issue here is a portion of the Membership Agreement Petitioners executed with Southwest Power Pool to join the RTO. Petitioners' refusal rights were contained in Section 3.3 of their Agreement. Order No. 1000's removal mandate thus obligated Southwest Power Pool to revise that provision. In its filing to comply with the order, Southwest Power Pool proposed to FERC the necessary deletions to Section 3.3, but simultaneously argued that FERC should not implement the revisions because the Agreement is protected by the *Mobile-Sierra* doctrine.

The Commission thought otherwise. *See* Southwest Power Pool, Inc., Order on Compliance Filings, Docket No.

ER13-366-000, *et al.*, 144 FERC ¶ 61,059 (July 18, 2013) (Initial Order), *on reh'g*, 149 FERC ¶ 61,048 (Oct. 16, 2014) (Rehearing Order).  It decided that, "in determining whether a *Mobile-Sierra* presumption applies in a specific instance, the Commission must determine whether the instrument or provision at issue embodies" certain characteristics. Rehearing Order ¶ 94.  It distinguished between individualized rates, terms, and conditions negotiated freely at arm's length, and generally applicable, so-called "tariff" provisions that do not arise from such negotiations.  Initial Order ¶ 127; Rehearing Order ¶ 94.  According to the Commission, *Mobile-Sierra* only applies to the former because "'the premise on which [it] rests' is 'that the contract rates are the product of fair, arms-length negotiations.'" Rehearing Order ¶ 95 (citing *Morgan Stanley*, 554 U.S. at 554).  At the same time, FERC noted its discretion to apply the presumption to the latter.  *Id.* ¶ 94 (citing Initial Order ¶ 127; *New England Power Generators Ass'n, Inc. v. FERC*, 707 F.3d 364, 370-71 (D.C. Cir. 2013)).  It concluded that Section 3.3 failed its threshold, arms-length bargaining test. Initial Order ¶ 130-35; Rehearing Order ¶ 100-112.  On rehearing, FERC did not alter its conclusion, but as an aside clarified that the other Agreement provisions, not just Section 3.3, also amounted to generally applicable terms and conditions not subject to *Mobile-Sierra*.  *See* Rehearing Order ¶ 100.

**II.**

Petitioners contend that any "valid, freely negotiated contract automatically is subject to" *Mobile-Sierra*. Pet'r Br. 29.  On the other hand, FERC is of the view that *Mobile-Sierra* requires it to determine whether the instrument or provision at issue embodies an "individualized" rate, term, or condition that "appl[ies] only to sophisticated parties who

negotiated [it] freely at arm's length," or whether instead the provision is "generally applicable or . . . arose in circumstances that do not provide the assurance of justness and reasonableness associated with arms-length negotiations" – with only the former qualifying for the *Mobile-Sierra* presumption. Initial Order ¶ 127; Rehearing Order ¶ 94.

We begin by returning to *Mobile* and *Sierra*. *See New York New York, LLC v. NLRB*, 313 F.3d 585, 590 (D.C. Cir. 2002) ("We are not obligated to defer to an agency's interpretation of Supreme Court precedent under *Chevron* or any other principle."). The doctrine first arose from those cases in the context of rate-setting. In *Mobile*, the Supreme Court held that the Natural Gas Act did not allow a gas utility to file a new tariff with the Commission superseding the rates set forth in a contract it had previously executed. 350 U.S. at 344. The same day, the Court confronted a similar situation under the nearly identical provisions of the FPA in *Sierra* and ruled the same way. 350 U.S. at 353.

*Sierra* raised an additional question regarding rate-setting. Even though the utility could not file with the Commission and thereby unilaterally impose a new tariff, the Court further considered whether FERC was statutorily authorized to set aside the contract rate as part of its Section 206(a) authority, which allows it to replace an unjust and unreasonable rate with a just and reasonable one. *See id.* (citing 16 U.S.C. § 824e(a)). The Court declined to allow FERC to set aside a rate simply because it is not profitable. *See id.* at 354-55. The Court explained that a public utility may "agree by contract to a rate affording less than a fair return," and such an agreement does not necessarily mean the utility is "entitled to be relieved of its improvident bargain." *Id.* at 355. When evaluating whether a contract rate is just and reasonable, "the sole concern of the Commission,"

explained the Court, "would seem to be whether the rate is so low as to adversely affect the public interest – as where it might impair the financial ability of the public utility to continue its service, cast upon other consumers an excessive burden, or be unduly discriminatory." *Id.*

Subsequent decisions have refined the doctrine in several ways. In *Morgan Stanley*, one of the two Supreme Court cases other than *Mobile* and *Sierra* that Petitioners rely on, *see* Pet'r Br. 29-37, the Court confronted long-term contracts through which utilities bought power at historically elevated rates during an energy crisis, *see* 554 U.S. at 540-41. Although it reaffirmed that *Mobile-Sierra* applied to those utilities' buyer's remorse, *id.* at 548, the Court explained that contract rates agreed to via fraud or duress do not merit the presumption. *Id.* at 554; *see also id.* at 535 (clarifying that the term, "public interest," simply refers to a "differing *application* of th[e] just-and-reasonable standard"); *id.* at 534 (describing the various ways parties can contract around *Mobile-Sierra*). In *NRG Power*, the second case Petitioners invoke, the Court confirmed that *Mobile-Sierra* attaches to the challenged rates even in suits brought by non-parties. *NRG Power Marketing, LLC v. Maine Public Utilities Commission* (*NRG Power*), 558 U.S. 165, 176 (2010). That case involved an agreement providing for auction prices pursuant to forward capacity markets, where energy providers committed themselves to purchasing a certain amount of capacity at a particular price years in advance. *See id.* at 170. After the Court remanded to us to decide "[w]hether the rates at issue qualify as 'contract rates,'" *id.* at 176, we said that even assuming some difference between auction and contract rates, the Commission was free all the same to apply the logic of *Mobile-Sierra*, *see New England Power Generators Ass'n, Inc. v. FERC*, 707 F.3d 364, 371 (D.C. Cir. 2013).

These cases show that the Supreme Court has at least thus far applied the doctrine to rates, although we are presented here with a right of first refusal provision. As neither party advocates for restricting *Mobile-Sierra* exclusively to rates, there is no need to decide that question. We assume *arguendo* that the presumption is not so limited. More importantly, this precedent reflects that no matter the contract provision at issue, even if the *Mobile-Sierra* doctrine might apply to it generally, FERC did not err in determining that the doctrine does not extend to anti-competitive measures that were not arrived at through arms-length bargaining. In other words, the term must be the product of adversarial negotiations between sophisticated parties pursuing independent interests. Although *Sierra*'s holding arose in the rate-setting context, the Commission properly noted the Supreme Court's concern about the impropriety of interfering with a "*bargain*," however "improvident." *Sierra*, 350 U.S. at 355 (emphasis added). Indeed, the doctrine "rests on 'the stabilizing force of contracts,'" *NRG Power*, 558 U.S. at 168 (citing *Morgan Stanley*, 554 U.S. at 548), which thereby ensures "the promotion of stable energy supply arrangements," *New England Power*, 707 F.3d at 368, though not to the extent of protecting, for example, "unfair dealing at the contract formation stage," *Morgan Stanley*, 554 U.S. at 547; *see also NRG Power*, 558 U.S. at 167 (describing the doctrine as requiring a rate set by "a freely negotiated" contract) (citing *Morgan Stanley*, 554 U.S. at 530). Just as unfair dealing, fraud, or duress will remove a provision from the ambit of *Mobile-Sierra*, so also will terms arrived at by horizontal competitors with a common interest to exclude any future competition.

That is what happened with the rights at issue here. As the Commission in its expert judgment already determined, the rights of first refusal created "a pre-existing barrier to

entry" for nonincumbent transmission owners. *South Carolina*, 762 F.3d at 77 (citing Order No. 1000 ¶¶ 256-57, 76 Fed. Reg. at 49,886). Rather than promote competition, FERC found they created disincentives for nonincumbents to identify and commit resources to cost-effective solutions to transmission needs. *See id.* The Seventh Circuit has gone so far as to describe such self-protective and anti-competitive agreements as cartel-like. *See MISO Transmission Owners v. FERC*, 819 F.3d 329, 335 (7th Cir. 2016). We similarly think that such terms through "which the parties are seeking to protect themselves from competition from third parties" are a far cry from those in the original *Mobile-Sierra* cases. *Id.* While Petitioners decline to acknowledge any anti-competitive intent behind Section 3.3, we accept the Commission's determination that the provision restricts competition.[2] S*ee* Rehearing Order ¶ 101 (explaining that new members "must accept th[e right of first refusal provision] with limited room for negotiation"); *id.* ¶ 103 (describing "substantial barriers" to amending Section 3.3); *id.* ¶ 101-02 (refuting allegations that other members negotiated any departure from that provision); *id.* ¶ 104 (disagreeing that the option of voluntarily accepting section 3.3 or not transacting at all transforms the provision into an individually negotiated one).

All of this means that the Commission arrived at a legally valid outcome without requiring us to decide the propriety of its assumption that *Mobile-Sierra* applies outside the context of rates and procedures for setting rates. Indeed, both parties have argued this case on the premise that *Mobile-Sierra* is

---

[2] We hold only that *Mobile-Sierra* does not apply to the right of first refusal provision in Section 3.3, and do not reach the Commission's statement in its Rehearing Order regarding the characteristics of the larger Membership Agreement.

generally available to all contractual provisions that have *some effect* on rates. To be clear, as we stated in *New England Power*, the Commission certainly is free to exercise its discretion to apply the presumption to terms other than contract rates, even where it is not required to do so, at least with respect to rate-related terms. *See* 707 F.3d at 371 ("FERC's determination that the logic of *Mobile-Sierra* still applied [to an auction rate] is 'a reasonable choice within a gap left open by Congress' and so within the purview of the agency's discretion under § 205(a) of the FPA."). Had FERC used its two-part test in a truly discretionary manner, perhaps we could uphold it on that basis. As it stands, the Commission made no such discretionary judgment, and we need not fully endorse the approach it did take as the law requires denial of the petition in any case. *See Morgan Stanley*, 554 U.S. at 545 ("That [FERC] provided a different rationale for the necessary result is no cause for upsetting its ruling.").

\*\*\*

For the foregoing reasons, we deny the petition for review.

*So ordered.*