# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued January 13, 2017        Decided April 18, 2017

No. 15-1139

EMERA MAINE, FORMERLY KNOWN AS BANGOR
HYDRO-ELECTRIC COMPANY, ET AL.,
PETITIONERS

v.

FEDERAL ENERGY REGULATORY COMMISSION,
RESPONDENT

LS POWER TRANSMISSION, LLC, ET AL.,
INTERVENORS

Consolidated with 15-1141

On Petitions for Review of Orders of the
Federal Energy Regulatory Commission

*Sean A. Atkins* argued the cause for petitioners Emera
Maine, et al. With him on the briefs were *Kenneth G. Jaffe*,
*Michael E. Ward*, *Jeffrey M. Jakubiak*, *Stephen M. Spina*,
*David R. Poe*, *David B. Raskin*, *Karen Krug O'Neill*, and *S.
Mark Sciarrotta*. *Jason J. Fleischer*, *Charles G. Cole*, *Mary E.
Grover*, and *Phyllis E. Lemell* entered appearances.

*Jason Marshall* argued the cause for petitioners New England States Committee on Electricity, Inc., et al. With him on the joint briefs were *John Michael Adragna*, *Phyllis G. Kimmel*, *Jeffrey K. Janicke*, *F. Anne Ross*, *Edward McNamara*, *Clare E. Kindall* and *Robert D. Snook*, Assistant Attorneys General, Office of the Attorney General for the State of Connecticut, *Maura Healy*, Attorney General, Office of the Attorney General for the Commonwealth of Massachusetts, *Jeffrey M. Leupold*, Senior Counsel, and *Leo J. Wold*, Assistant Attorney General, Office of the Attorney General for the State of Rhode Island.

*Carol J. Banta*, Senior Attorney, Federal Energy Regulatory Commission, argued the cause for respondent. With her on the brief was *Robert H. Solomon*, Solicitor.

*Paul Alessio Mezzina* argued the cause for intervenors supporting respondent in Case No. 15-1139. With him on the brief were *Ashley C. Parrish*, *David G. Tewksbury*, *Gunnar Birgisson*, and *Michael R. Engleman*.

Before: BROWN and WILKINS, *Circuit Judges*, and EDWARDS, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* WILKINS.

WILKINS, *Circuit Judge*: We consider two petitions for review challenging determinations by the Federal Energy Regulatory Commission ("FERC" or "the Commission") following compliance filings by the regional transmission organization for New England's electric grid. *See* ISO New England Inc., Order on Compliance Filings, 143 F.E.R.C. ¶ 61,150 (May 17, 2013) (Initial Order), *on reh'g*, 150 F.E.R.C. ¶ 61,209 (Oct. 16, 2014) (Rehearing Order).

For the reasons given below, both petitions for review are denied.

**I.**

In 2011, the Commission issued Order No. 1000, ordering utilities to remove certain "right of first refusal" provisions from their existing tariffs and agreements. *See Transmission Planning and Cost Allocation by Transmission Owning and Operating Public Utilities*, F.E.R.C. Stats. & Regs. ¶ 31,323, 76 Fed. Reg. 49,842 (2011) [hereinafter Order No. 1000]. These provisions granted incumbent utilities "the option to construct any new transmission facilities in their particular service areas, even if the proposal for new construction came from a third party." *S.C. Pub. Serv. Auth. v. FERC* (*South Carolina*), 762 F.3d 41, 72 (D.C. Cir. 2014) (per curiam). Order No. 1000's prohibition of such provisions was premised on the rationale that rights of first refusal deterred new entrants "from proposing much-needed infrastructure reforms, discouraging competition within the industry, and potentially driving up the cost of rates charged for wholesale electricity service." *Okla. Gas & Elec. Co. v. FERC* (*Oklahoma Gas*), 827 F.3d 75, 76 (D.C. Cir. 2016).

Order No. 1000 was upheld by this Court in *South Carolina*. 762 F.3d at 71-81. The petitioners in that case raised a litany of challenges to the Order, including that FERC was prevented from eliminating rights of first refusal because those provisions were entitled to the *Mobile-Sierra* presumption. *Id.* at 81. The *Mobile-Sierra* presumption requires the Commission to "presume a contract rate for wholesale energy is just and reasonable" and prohibits the Commission from setting aside that rate unless the Commission finds that the rate

"seriously harm[s] the public interest."[1]  *Id.*; *see generally United Gas Pipe Line Co. v. Mobile Gas Serv. Corp.* (*Mobile*), 350 U.S. 332 (1956); *Fed. Power Comm'n v. Sierra Pac. Power Co.* (*Sierra*), 350 U.S. 348 (1956).  It is premised on the idea that arms-length bargaining generally results in contract rates that are just and reasonable.  *See NRG Power Mktg., LLC v. Me. Pub. Utils. Comm'n*, 558 U.S. 165, 175 n.4 (2010).

In Order No. 1000, "[t]he Commission had reserved judgment on whether to apply this presumption to the rights of first refusal until evaluating the individual utilities' compliance filings, and therefore so did we."  *Oklahoma Gas*, 827 F.3d at 76 (citing *South Carolina*, 762 F.3d at 81).

*Oklahoma Gas* presented the situation *South Carolina* anticipated and we considered a petition for review of a FERC compliance filing determination in which FERC refused to apply the *Mobile-Sierra* presumption to a right of first refusal provision.  We held that the *Mobile-Sierra* presumption was inapplicable because the presumption does not extend to "terms arrived at by horizontal competitors with a common interest to exclude any future competition."  *Id.* at 80.

The case before us now presents a slight wrinkle on the question we answered in *Oklahoma Gas*, along with a separate challenge to an application of another provision of Order No. 1000.

---

[1] In *Oklahoma Gas*, we noted that "the Supreme Court has at least thus far applied the doctrine to rates, although we are presented here with a right of first refusal provision."  827 F.3d at 79.  In that case, as here, because "neither party advocates for restricting *Mobile-Sierra* exclusively to rates, there is no need to decide that question."  *Id.*

In response to Order No. 1000, a compliance filing was made by ISO New England Inc. ("ISO-NE") – the FERC-approved regional transmission organization whose tariff governs transmission service and wholesale electric markets in New England – and its participating transmission owners (the "Transmission Owners"). After FERC issued the Initial Order and Rehearing Order containing FERC's compliance determinations, two petitions for review were filed with this Court.

The first petition for review was filed by the Transmission Owners, who object to FERC's determination that the right of first refusal must be removed from the Transmission Operating Agreement among ISO-NE and the Transmission Owners. What makes this case different from *Oklahoma Gas* is that, here, FERC purported to apply the *Mobile-Sierra* presumption as a matter of discretion, even though FERC continued to maintain that it was not required to apply the presumption as a matter of law (a position we vindicated in *Oklahoma Gas*). As a result, we must consider the new question of whether FERC has overcome the *Mobile-Sierra* presumption, which presents a higher hurdle than the more deferential default standard for evaluating FERC actions.

The second petition for review was filed by the New England States Committee on Energy, Inc. ("NESCOE") and governmental entities from five of the six states it represents in regional electricity matters:  Connecticut, Massachusetts, New Hampshire, Rhode Island, and Vermont (collectively, with NESCOE, the "State Petitioners"). The State Petitioners argue that, in the ISO-NE compliance order, the Commission went beyond Order No. 1000 and impermissibly altered the balance of responsibility and power as between state governments and ISO-NE.

## II.

We consider first the petition for review filed by the Transmission Owners.

In its orders, the Commission determined that the *Mobile-Sierra* presumption did not apply as a matter of law. *See* Initial Order ¶¶ 160-72. Nevertheless, as a matter of discretion, the Commission applied the presumption to the right of first refusal provision in Section 3.09 of the Transmission Operating Agreement, noting that it had earlier accorded *Mobile-Sierra* protection to the provision in 2004 when the Transmission Operating Agreement was first approved. *See id.* ¶ 172. However, the Commission ultimately found that the right of first refusal "severely harm[s] the public interest," meaning that the *Mobile-Sierra* presumption was overcome. *Id*. As a result of this analysis, the Commission ordered the right of first refusal provision stricken from the Transmission Operating Agreement. *Id.* ¶ 11.

The Transmission Owners first assert that the Commission erred in finding the *Mobile-Sierra* presumption inapplicable as a matter of law. In addition, the Transmission Owners contend that FERC did not properly establish that the right of first refusal harmed the public interest, as is required in order to overcome the presumption.

### A.

The Commission argues that the Transmission Owners lack standing to contest the determination that the *Mobile-Sierra* presumption does not apply as a matter of law, because the Commission nonetheless applied the presumption as a matter of discretion.

In support of its contention that standing is absent, the Commission cites *New England Power Generators Association v. FERC*, 707 F.3d 364 (D.C. Cir. 2013). In *New England Power*, the Commission was attacked from two sides after it concluded that rates resulting from an auction process were not contract rates, but nevertheless were subject to the *Mobile-Sierra* presumption. As we explained, one petitioner "like[d] the result but not the reasoning: it argue[d] the auction results, as contract rates, *must* receive the *Mobile–Sierra* presumption," while an opposing group of petitioners "support[ed] much of FERC's reasoning but not the result: they contend that because the auction results are not contract rates, FERC cannot presume them just and reasonable." *New England Power*, 707 F.3d at 366 (emphasis omitted). We held that the first petitioner lacked standing because "its desired outcome – application of *Mobile-Sierra*'s public interest standard – has already been achieved." *Id.* at 369.

There is one crucial distinction between *New England Power* and this case, however: in *New England Power*, the petitioner had prevailed before the Commission and was objecting only to the Commission's reasoning in reaching that favorable result. Here, by contrast, the Transmission Owners not only take issue with the Commission's reasoning but are also aggrieved by the Commission's conclusion that the right of first refusal must be removed from the Transmission Operating Agreement.

Of course, the fact that the *Mobile-Sierra* presumption was applied as a matter of discretion by the Commission renders irrelevant the Transmission Owners' argument that the Commission was required to apply it as a matter of law.[2]

---

[2] In any event, our decision in *Oklahoma Gas* has since rejected the Transmission Owners' argument that FERC is required to apply the

However, this does not diminish the Transmission Owners' standing to challenge an adverse determination by the Commission.

**B.**

Since the Transmission Owners have standing to bring their challenge, we must evaluate whether the Commission erred in finding that the right of first refusal in the Transmission Operating Agreement "severely harm[s] the public interest." *See* Initial Order ¶ 172. FERC's determination will be set aside if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *see, e.g.*, *Williams Gas Processing-Gulf Coast Co. v. FERC*, 475 F.3d 319, 326 (D.C. Cir. 2006).

The Transmission Owners' objections fall into three categories. First, they assert that FERC's orders were inconsistent with its past decisions. Second, the Transmission Owners allege that FERC applied the wrong legal standard as the yardstick for measuring whether the *Mobile-Sierra* presumption had been overcome. Finally, the Transmission Owners argue that FERC's determination was not in accord with the evidence before it. We consider these arguments in turn.

**1.**

"[I]t is 'axiomatic that [agency action] must either be consistent with prior [action] or offer a reasoned basis for its departure from precedent . . . .'" *Williams Gas*, 475 F.3d at 326 (alterations in original) (quoting *Brusco Tug & Barge Co. v. NLRB*, 247 F.3d 273, 278 (D.C. Cir. 2001)). The

*Mobile-Sierra* presumption to rights of first refusal such as the one at issue in this case. *See Oklahoma Gas*, 827 F.3d at 80.

Transmission Owners allege that the Commission's determinations in the challenged orders flunk this requirement because they are inconsistent with two prior actions by the Commission: Order No. 1000 and the 2004 order that first approved the Transmission Operating Agreement.

In Order No. 1000, the Commission declined to resolve the question of whether the *Mobile-Sierra* presumption applied to the threatened rights of first refusal in existing tariffs and agreements. The Commission noted that one commenter – National Grid – had argued that the presumption applied to the specific right of first refusal in the Transmission Operating Agreement at issue here. However, the Commission found "that the record is not sufficient to address the specific issues raised by National Grid in this generic proceeding." Order No. 1000 ¶ 292. The Commission further explained:

> [W]e generally do not interpret an individual contract in a generic rulemaking, and we are not persuaded to do so here given the limited record developed so far on section 3.09. Thus, we conclude that these arguments, including National Grid's argument as to the applicable standard of review, are better addressed as part of the proceeding on ISO New England's compliance filing pursuant to this Final Rule, where interested parties may provide additional information.

*Id.*

In the Rehearing Order, the Commission elaborated, noting that the record at the time of Order No. 1000 was insufficient because the Commission issued Order No. 1000 "prior to having before it the universe of contracts and arguments to determine which lend support to, or provide evidence against the specific issue." Rehearing Order ¶ 193.

Once the specific contract and relevant arguments were submitted as part of the compliance filing process, "the Commission was able to examine together all the arguments relating to this specific issue – *Mobile-Sierra* protection of the right of first refusal provisions – as well as the individual contract provisions and other related documents, such as Commission orders addressing these provisions." *Id.* The Commission explained that its "findings on compliance were based on this more complete, and now sufficient, record." *Id.*

The Transmission Owners take issue with the Commission's characterization. They argue that the Commission's decision in the orders now under review arbitrarily departed from the Commission's finding in Order No. 1000 that the record was not sufficient to address the applicability of the *Mobile-Sierra* presumption. The thrust of the petitioners' argument is that the only new empirical data introduced between the time FERC issued Order No. 1000 and the Initial Order was information introduced by the Transmission Owners to show that regional transmission needs were already being addressed while the right of first refusal was in place. Accordingly – per the Transmission Owners' argument – if the record was insufficient to make a *Mobile-Sierra* finding when Order No. 1000 was issued, it remained insufficient at the time of the Initial Order.

This misunderstands the way in which the record was "not sufficient" at the time of Order No. 1000. The Transmission Owners view the Initial Order as reaching a different verdict from Order No. 1000 in spite of the fact that no new evidence was introduced in support of that new verdict. To the contrary, FERC did not come to any verdict on the *Mobile-Sierra* issue in Order No. 1000. Instead, the Commission deferred until later compliance proceedings the introduction of specific evidence about the Transmission Operating Agreement –

including the text of the agreement itself – and the region. *See* Order No. 1000 ¶ 292. Because this evidence had not yet been introduced, the record in Order No. 1000 was "insufficient" to reach *any verdict*, not just insufficient to find that the right of first refusal was sufficiently harmful to overcome the *Mobile-Sierra* presumption. *See id.* ("[T]he record is not sufficient to *address* the specific issues raised . . . ." (emphasis added)). It was not at all inconsistent for FERC to treat the record as sufficient to reach such a verdict after the introduction of the language of the provision at issue and other information from interested parties.

The Transmission Owners cite a second example of purportedly inconsistent decision-making. This time, the earlier decision was the 2004 order by the Commission approving the Transmission Operating Agreement in which the Commission found that the Transmission Operating Agreement's right of first refusal provision "will have no adverse impact on third parties or the New England market." *ISO New England, Inc.*, 109 F.E.R.C. ¶ 61,147, ¶ 78 (2004). In its Initial Order, which is the subject of the petition for review in this case, the Commission addressed the argument that the 2004 finding precluded its new determination that the right of first refusal "severely harm[s] the public interest" and therefore must be removed. *See* Initial Order ¶ 172. The Commission asserted that the 2004 finding presents no barrier because the Commission "is permitted to adapt its rules and policies in light of changing circumstances" and "changes in the electric industry driving the demand for new transmission, coupled with the advent of nonincumbent transmission developers, led the Commission to reexamine the effect of federal rights of first refusal on customers and nonincumbent transmission developers." *Id.* ¶¶ 196-98.

In support of this proposition, the Commission cited a 1968 Supreme Court decision upholding the Commission's restriction of escalation clauses in natural gas contracts notwithstanding an earlier decision of the Commission that had expressly declined to limit their use. *Id.* ¶ 197 (citing *In re Permian Basin Area Rate Cases*, 390 U.S. 747, 783-84 (1968)). In the cited case, the Court held that the challenged decision may not "properly be set aside merely because the Commission has on an earlier occasion reached another result; administrative authorities must be permitted, consistently with the obligations of due process, to adapt their rules and policies to the demands of changing circumstances." *Permian Basin*, 390 U.S. at 784.

This case presents another example of changing circumstances and an appropriate adaptation of rules and policies by FERC. While FERC reached a different conclusion in its Initial Order than in its 2004 order approving the Transmission Operating Agreement, this different conclusion was not the result of arbitrary decision-making by the Commission. Rather, it was the natural consequence of the new policy adopted in Order No. 1000 to address the changing circumstances identified by the Commission.

**2.**

Turning to the meat of FERC's analysis, the Transmission Owners argue that FERC did not apply the correct legal standard in analyzing whether the *Mobile-Sierra* presumption had been overcome.

We considered the application of the *Mobile-Sierra* standard in a similar context in *Texaco Inc. v. FERC*, 148 F.3d 1091 (D.C. Cir. 1998), where we upheld FERC's application of a generic rule – Order No. 636 – to a particular contract.

Order No. 636 required pipelines to use a new pricing method that was intended to promote a national gas-sales market by reducing the impact of fixed costs – which vary significantly between pipelines – on market prices. *Id.* at 1094.

In a rate filing shortly after FERC promulgated Order No. 636, one pipeline proposed maintaining its existing rate structure for existing customers and adopting the new rate structure for new customers only. *Id.* FERC rejected that proposal, finding that it would "distort the pricing information signals that Order 636 was designed to regularize." *Id.* at 1095. Because the rate provisions in the service agreements between the pipeline and its existing customers were subject to the *Mobile-Sierra* presumption, FERC was required to show that "the public interest required it to intervene." *Id.* at 1096.

After reviewing the record, we found FERC's public interest showing in *Texaco* to be sufficient. We explained that "the 'public interest' that permits FERC to modify private contracts is different from and more exacting than the 'public interest' that FERC seeks to serve when it promulgates its rules," meaning that "more is required to justify regulatory intervention in a private contract than a simple reference to the policies served by a particular rule." *Id.* at 1097. While "FERC relie[d] in part on the public interest rationale articulated in Order 636 to justify its modification of the" service agreements, FERC "did not rest its reformation of the [service] agreements on the generalized public interest goals underlying Order 636." *Id.* Instead, FERC determined that retaining the existing rate structure in the contracts at issue would adversely affect the public interest, specifically by "distort[ing] gas market pricing to the detriment of the integrated national gas sales market" and by inflicting "anti-competitive" harm on the pipeline's main competitor. *Id.* (internal quotation marks omitted).

In this way, *Texaco* drew a distinction between mere recitation of policy goals and a "particularized" analysis of the deleterious effects of the contract provision at issue. While new policies – such as those adopted in Order No. 636 in *Texaco* or Order No. 1000 here – may be supported by "generalized public interest goals," "particularized" analysis is required in order to overcome the *Mobile-Sierra* presumption where it applies.

The Commission's challenged orders in this case contain the requisite "particularized" analysis. In Order No. 1000, the Commission found that rights of first refusal are generally anticompetitive. *See* Order No. 1000 ¶¶ 256-57. In the orders now being challenged, FERC went further and found that the specific right of first refusal in ISO-NE's Transmission Operating Agreement "would adversely affect transmission development." Rehearing Order ¶ 204; *see also id.* ¶ 196-97 (citing evidence of "transmission system expansion" in New England that "makes the need to foster competitive practices more acute"). Of course, the Transmission Owners may quibble with the evidentiary basis for that conclusion – and they do, as discussed below – but it cannot be said that the Commission failed to make the "particularized" finding required by our case law.

The Transmission Owners have one additional argument regarding the legal standard. They point to a statement from the Supreme Court's decision in *Morgan Stanley Capital Group Inc. v. Public Utility District No. 1*, 554 U.S. 527 (2008): "We have said that, under the *Mobile-Sierra* presumption, setting aside a contract rate requires a finding of 'unequivocal public necessity' or 'extraordinary circumstances.'" *Id.* at 550-51 (citations omitted) (quoting *Permian Basin*, 390 U.S. at 822; *Ark. La. Gas Co. v. Hall,* 453

U.S. 571, 582 (1981)).  The Transmission Owners argue that this sentence requires FERC, in all cases in which the *Mobile-Sierra* presumption applies, to make an explicit finding of either "unequivocal public necessity" or "extraordinary circumstances."

We reject the invitation to don blinders and read this sentence as establishing an exclusive list of phrases FERC must incant to rebut the *Mobile-Sierra* presumption.  Reading just two paragraphs down in the same opinion reveals the Court's conclusion that "the FPA intended to reserve the Commission's contract-abrogation power for *those extraordinary circumstances where the public will be severely harmed.*"  *Id.* at 551 (emphasis added).  In other words, severe harm to the public constitutes extraordinary circumstances.  Where FERC has made a finding of such harm, it has made the requisite finding of extraordinary circumstances.  FERC made such a finding here, *see* Initial Order ¶ 172, thereby clearing the *Mobile-Sierra* bar as articulated in *Morgan Stanley*.

**3.**

The Transmission Owners also contend that, in reaching the conclusion that the rights of first refusal harmed the public interest, the Commission identified no evidence to support that conclusion and ignored the contrary evidence submitted by defenders of the right of first refusal.

The Transmission Owners' first contention – that FERC identified no evidence in support of its conclusion – is based on the faulty premise that economic theory cannot provide the basis for FERC's decisions.  As we held in rejecting a nearly identical challenge to Order No. 1000, "at least in circumstances where it would be difficult or even impossible to marshal empirical evidence, the Commission is free to act

based upon reasonable predictions rooted in basic economic principles." *South Carolina*, 762 F.3d at 76; *see also id.* at 64-65. This case presents a nearly identical circumstance to that addressed in *South Carolina*, as we once again must decide whether the Commission was entitled to rely on economic and competition theory to justify its decision in the absence of empirical data. Again we reach the same result, mindful of the limitations of empirical data in evaluating a counterfactual and the proper role of other forms of evidence in some situations. *Cf. id.* at 65 ("Agencies do not need to conduct experiments in order to rely on the prediction that an unsupported stone will fall; nor need they do so for predictions that competition will normally lead to lower prices." (quoting *Associated Gas Distribs. v. FERC*, 824 F.2d 981, 1008-09 (D.C. Cir. 1987))).

The Transmission Owners' second contention – that FERC ignored the evidence they introduced into the record – is also wrong. The Transmission Owners introduced evidence that ISO-NE "has placed $4.7 billion in new transmission facilities in service and has placed another $5.7 billion in projects (in different stages of development) in the ISO-NE Regional System Plan." Rehearing Order ¶ 196. This evidence of transmission development, they contend, demonstrates that the right of first refusal does not harm the public interest.

Far from ignoring this evidence, FERC confronted it head-on. The Commission credited the evidence, but explicitly rejected the inference that "the incumbent transmission owners are sufficiently developing projects under the existing framework with their current rights of first refusal." *Id.* ¶ 197. The Commission did note, however, that this evidence illustrated the "onset" of a "development trend" – noted earlier by the Commission in Order No. 1000 – that "demonstrates a changing circumstance in the marketplace, which continues to threaten the public interest by avoiding expected efficiencies

and cost savings and makes the need to foster competitive practices more acute." *Id.* (footnote omitted).

The rejection of the Transmission Owners' preferred inference was well within the Commission's discretion. Evidence of a certain level of *past* development does not compel a conclusion about the development that would have occurred in a counterfactual universe without the right of first refusal provision or, more importantly, the relative level of development that would occur in the future in alternate universes with and without the provision. The inference that there is a functioning market with the right of first refusal in place may be plausible, but the contrary conclusion drawn by FERC is plausible as well. "Where the evidence might support more than one rational interpretation, 'the question we must answer . . . is not whether record evidence supports [the petitioner's] version of events, but whether it supports FERC's.'" *Cogeneration Ass'n of Cal. v. FERC*, 525 F.3d 1279, 1283 (D.C. Cir. 2008) (alterations in original) (quoting *Fla. Mun. Power Agency v. FERC*, 315 F.3d 362, 368 (D.C. Cir. 2003)). Accordingly, we reject the Transmission Owners' challenge to the Commission's orders.

## III.

We turn next to considering the petition for review filed by the State Petitioners, which takes issue with a different aspect of the Commission's orders.

In addition to addressing rights of first refusal, Order No. 1000 also required the consideration of transmission needs driven by public policy when determining what projects to include in the Regional System Plan for cost allocation purposes. *See* Order No. 1000 ¶¶ 78-84. Public policy requirements that could give rise to transmission needs include

"enacted statutes (i.e., passed by the legislature and signed by the executive) and regulations promulgated by a relevant jurisdiction, whether within a state or at the federal level." *Id.* ¶ 2.

ISO-NE's compliance filing included a proposed multi-step procedure for complying with this new requirement. *See* Initial Order ¶¶ 77-84. Under this proposal, NESCOE – the regional committee that represents the New England states in electricity matters – would first "identify state and federal public policies that may drive the need for transmission in New England." *Id.* ¶ 77. After transmission needs are identified, "ISO-NE will undertake scenario studies to provide a sense of the costs and benefits of various high-level alternatives." *Id.* Then, "[i]f some or all states determine that those transmission solutions may meet their identified public policies," those states may direct ISO-NE to solicit initial proposals from transmission developers. *Id.* ISO-NE was tasked with conducting a preliminary review of those proposals, after which NESCOE "may submit to ISO-NE a list of projects that one or more of the states would like to have further developed." *Id.* ¶¶ 82-83. However, if NESCOE does not identify any projects to be further developed, the planning process would end. *Id.* ¶ 83. Ultimately, ISO-NE would place projects into the Regional System Plan only if requested by either NESCOE or the participating states' utility regulatory authorities. *Id.* ¶ 84.

FERC rejected this proposed procedure because it left to NESCOE or the states several roles that FERC contends Order No. 1000 had directed ISO-NE – the regional transmission organization – to fulfill. *See id.* ¶¶ 108, 116. FERC asserted:

[T]o comply with Order No. 1000 the Filing Parties must propose a process for the public utility

transmission providers in the region to select in the regional transmission plan for purposes of cost allocation the more efficient or cost-effective transmission solution that resolves an identified transmission need driven by public policy requirements.

*Id.* ¶ 108.

The State Petitioners object on two grounds. First, they argue that FERC's determination impermissibly conflicts with and expands on Order No. 1000. This argument turns on the State Petitioners' reading of the word "select" in the Initial Order as meaning that FERC requires not only a process to identify transmission needs driven by public policy requirements and evaluate potential transmission solutions that could meet those needs – two requirements that the State Petitioners do not dispute are contained in Order No. 1000 – but also *selection* of whichever project is the most efficient or cost-effective.

We need not determine whether any such selection requirement would be permissible, however, because the Commission adamantly disclaims such a reading. The Commission explains that the language at issue was not distinguishing between *identifying* transmission needs and *selecting* projects, but rather was clarifying which entity must control each step of the process. The Rehearing Order made clear that there is no requirement that ISO-NE "must select . . . a transmission solution to address every identified transmission need driven by a public policy requirement." Rehearing Order ¶ 126. The only selection requirement is that if a solution is selected it "must be selected by ISO-NE rather than by NESCOE." *Id.* In light of these clarifications by the Commission, there is no inconsistency with Order No. 1000.

The State Petitioners' second objection is that the Commission exceeded the bounds of its authority under the Federal Power Act ("FPA"). Specifically, the State Petitioners point to section 201(a) of the FPA, which provides that FERC's authority is "to extend only to those matters which are not subject to regulation by the States." 16 U.S.C. § 824(a). The Supreme Court has explained:

> The policy declaration that federal regulation is "to extend only to those matters which are not subject to regulation by the States" is one of great generality. It cannot nullify a clear and specific grant of jurisdiction, even if the particular grant seems inconsistent with the broadly expressed purpose. But such a declaration is relevant and entitled to respect as a guide in resolving any ambiguity or indefiniteness in the specific provisions which purport to carry out its intent. It cannot be wholly ignored.

*Conn. Light & Power Co. v. Fed. Power Comm'n*, 324 U.S. 515, 527 (1945).

As the State Petitioners concede, the "clear and specific" grants of jurisdiction in the FPA include FERC's authority to regulate the rates charged for transmission of electricity, *see* 16 U.S.C. § 824d, and to "facilitate the planning of a reliable grid," *see South Carolina*, 762 F.3d at 90. Nevertheless, the State Petitioners contend that the FPA does not grant FERC authority over what they characterize as "the means by which states meet their own public policy mandates." Pet'rs' (15-1141) Joint Br. 35.

This argument fails because it is necessarily an objection to the entire regional planning and cost allocation scheme. The

role of a regional transmission organization such as ISO-NE is to plan for the region's transmission needs. Order No. 1000 established a regional planning process that is agnostic as to the provenance of the transmission needs, whether resulting from population growth or federal public policy or state public policy. In *South Carolina*, we approved this process and explicitly rejected the argument that the regional planning "mandate infringes on the States' traditional regulation of transmission planning, siting, and construction, violating the federalism principle recognized in Section 201(a)." 762 F.3d at 62; *see also id.* at 58-59. Similarly, we held that providing for cost allocation falls within the Commission's authority to regulate the rates charged for electricity. *Id.* at 84.

The division of roles between ISO-NE and the states poses no jurisdictional problem for FERC. ISO-NE has no role in setting public policy for the states. ISO-NE considers transmission needs that arise from a variety of sources, one of which is the public policy requirements chosen by federal and state officials. *See* Rehearing Order ¶ 132 ("Transmission needs driven by public policy requirements, and not the public policy requirements themselves, are what must be considered by public utility transmission providers under Order No. 1000."). As we explained in *South Carolina*:

> The [regional planning] mandate simply recognizes that state and federal policies might affect the transmission market and directs transmission providers to consider that impact in their planning decisions. In this regard, the requirement is no different from other facets of the planning process. The providers assess what transmission capacity is required to fulfill a variety of needs (such as reliability of the grid, geographic expansion, and now public policy requirements) and then plan how to develop

that capacity. This fits comfortably within the Commission's authority under Section 206.

762 F.3d at 89-90 (citations omitted).

Requiring that ISO-NE, rather than the states, evaluate transmission needs and potential solutions is a reasonable implementation of Order No. 1000's regional planning process, which we upheld in *South Carolina*. That is true regardless of whether those transmission needs arise from state public policy requirements or any other source.

We note as well that the Commission's conclusion that the proposed regional planning process did not satisfy Order No. 1000 was supported by substantial evidence, as set forth in its Orders. *See* Initial Order ¶¶ 71-121; Rehearing Order ¶¶ 29-32, 98-154.

\*\*\*

For the foregoing reasons, both petitions for review are denied.

*So ordered.*