# United States Court of Appeals
### FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued September 14, 2021          Decided August 2, 2022

No. 20-1286

WABASH VALLEY POWER ASSOCIATION, INC.,
PETITIONER

v.

FEDERAL ENERGY REGULATORY COMMISSION,
RESPONDENT

TIPMONT RURAL ELECTRIC MEMBERSHIP COOPERATIVE,
INTERVENOR

Consolidated with 20-1348

On Petitions for Review of Orders
of the Federal Energy Regulatory Commission

*Randolph Lee Elliott* argued the cause for petitioner. With him on the briefs were *John Michael Adragna*, *William C. Simmerson*, and *Randolph G. Holt*.

*Beth G. Pacella*, Deputy Solicitor, Federal Energy Regulatory Commission, argued the cause for respondent. With her on the brief were *Matthew R. Christiansen*, General

Counsel, *David L. Morenoff*, Deputy General Counsel, and *Robert H. Solomon*, Solicitor.

*Richard L. Roberts* and *Jennifer L. Key* were on the brief for intervenor Tipmont Rural Electric Member Cooperative in support of respondent. *David B. Raskin* entered an appearance.

Before: KATSAS and RAO, *Circuit Judges*, and SILBERMAN, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* KATSAS.

KATSAS, *Circuit Judge*: This case presents a question of how to determine the reasonableness of rates for the sale of electricity from an energy cooperative to its individual member utilities. The rates are fixed by majority vote of the utilities. Contracts between the cooperative and certain members purport to impose a presumption that the rates are just and reasonable. In rejecting these contracts, the Federal Energy Regulatory Commission concluded that the rates are not entitled to a presumption of reasonableness under *United Gas Pipe Line Co. v. Mobile Gas Service Corp.*, 350 U.S. 332 (1956), and *FPC v. Sierra Pacific Power Co.*, 350 U.S. 348 (1956). We uphold the Commission's determination.

I

A

The Federal Power Act gives FERC jurisdiction over the wholesale transmission of electricity in interstate commerce. 16 U.S.C. § 824(b). Utilities may set rates unilaterally, by filing with the Commission tariffs setting forth the rates. *Id.* § 824d(c). Utilities also may set rates bilaterally through

contracts, which must also be filed with the Commission. *Id.* Either way, FERC must receive advance notice before any rate becomes effective. *Id.* § 824d(d).

The Act requires that all rates subject to FERC's jurisdiction be "just and reasonable." 16 U.S.C. § 824d(a). When a utility files a new rate, the Commission may suspend the rate's operation to determine whether it is just and reasonable. *Id.* § 824d(e). The utility bears the burden of proof on this question, and FERC may replace any rate that is not just and reasonable with one that is. *Id.* The Commission also may modify a rate after it has gone into effect if it affirmatively finds that the rate is not just and reasonable. *Id.* § 824e(a); *see Emera Me. v. FERC*, 854 F.3d 9, 24–25 (D.C. Cir. 2017).

In determining whether a unilaterally set tariff rate is just and reasonable, FERC "is not bound to any one ratemaking formula," although it "must choose a method that entails an appropriate balancing of the investor and the consumer interests." *Morgan Stanley Cap. Grp. Inc. v. Pub. Util. Dist. No. 1*, 554 U.S. 527, 532 (2008) (cleaned up). FERC has "traditionally reviewed and set tariff rates under the 'cost-of-service' method, which ensures that a seller of electricity recovers its costs plus a rate of return sufficient to attract necessary capital." *Id.* This standard of review is known as the ordinary just-and-reasonable standard. *Id.* at 535.

On the other hand, FERC's discretion to modify rates set by contract is narrower. Under the *Mobile-Sierra* doctrine, the Commission "must presume that the rate set out in a freely negotiated wholesale-energy contract meets the 'just and reasonable' requirement." *Morgan Stanley*, 554 U.S. at 530; *see Mobile Gas Serv. Corp.*, 350 U.S. 332; *Sierra Pac. Power Co.*, 350 U.S. 348. The presumption "may be overcome only if FERC concludes that the contract seriously harms the public

interest." *Morgan Stanley*, 554 U.S. at 530. This standard of review is known as the public-interest standard. *Id.* at 535.

B

The Wabash Valley Power Association is an Indiana-based cooperative established to generate and transmit electricity. Wabash is composed of 25 members. It serves as the exclusive provider of electricity to its 23 retail-serving members, which sell power to customers in Indiana, Illinois, and Missouri. Wabash's bylaws give each member one seat on its board of directors, which acts by majority vote.

Two sets of contracts, executed in 1977 and 2006 respectively, govern Wabash's sale of power to its members. The first set will remain in effect into 2028. The second set will then replace the first and remain in effect through 2050. For both sets, Wabash signed a separate contract with each individual member. The contracts within each set are identical, except for the name of the individual member and the delivery points for the power. Both sets of contracts require members to pay the rates set forth in Wabash's Formulary Rate Tariff. The contracts empower Wabash's board of directors to revise these rates to produce revenues sufficient to meet Wabash's costs, including the maintenance of reasonable reserves and margins.

In 2020, Wabash executed new contracts with 21 of its 23 retail-serving members. The new contracts took effect immediately, superseded the executing members' earlier contracts, and were to remain in effect through 2060. Like their predecessors, these contracts are identical except for each individual member's name and points of delivery. The new contracts continued to require members to pay the Formulary Rate Tariff and to empower Wabash's board to raise the rate to

produce sufficient revenue to meet all of Wabash's costs, including the maintenance of reasonable reserves and margins.

This case centers on a provision newly added to the 2020 contracts. Section 22 of these contracts purports to subject any changes to the Formulary Rate Tariff to the *Mobile-Sierra* presumption of justness and reasonableness:

> If … a modification or change to this Agreement, including the Tariffs, is unilaterally proposed by a Party, a non-Party, or FERC acting *sua sponte*, the Parties expressly agree that the standard of review for such changes shall be the "Public Interest" application of the just and reasonable standard of review set forth in [*Mobile*] and [*Sierra*], each standard as further set forth in [*Morgan Stanley*] and *NRG Power Mktg., LLC v. Me. Pub. Utils. Comm'n*, 558 U.S. 165 (2010).

J.A. 30.

After Wabash submitted the new contracts to FERC, Tipmont Rural Electric Membership Cooperative, one of the two member utilities that did not sign, filed a protest arguing that the *Mobile-Sierra* presumption should not apply to changes to the Formulary Rate Tariff. The Commission agreed. It ruled that the Formulary Rate Tariff is a "generally applicable rate" rather than a contract rate, making section 22 "an unlawful attempt to apply the public interest presumption to proposed changes to Wabash's tariffs." *Wabash Valley Power Ass'n*, 171 FERC ¶ 61,073, P 12 (2020). Finding itself not legally bound to accept the *Mobile-Sierra* presumption, FERC rejected the contracts. *Id.*

After FERC failed to act on an application for rehearing within 30 days, Wabash filed a petition for review. *See* 16

U.S.C. § 825*l*(a); *Allegheny Def. Project v. FERC*, 964 F.3d 1 (D.C. Cir. 2020) (en banc).

FERC then denied rehearing.  It again concluded that the Formulary Rate Tariff is not entitled to a presumption of reasonableness under the *Mobile-Sierra* doctrine.  The Commission reasoned that the rate "is generally applicable to all Wabash members and is not negotiated between Wabash and its Executing Members on an individualized basis.  Rather, the Wabash Board of Directors determines the rates provided in the Formulary Rate Tariff." *Wabash Valley Power Ass'n*, 172 FERC ¶ 61,177, P 15 (2020) (Rehearing Order) (footnote omitted) (citing *Tri-State Generation & Transmission Ass'n*, 170 FERC ¶ 61,221, PP 41–50 (2020)).  The Commission recognized that it was free to apply the *Mobile-Sierra* presumption as a matter of discretion, but it declined to do so. *Id.* P 16; *see also New Eng. Power Generators Ass'n, Inc. v. FERC*, 707 F.3d 364, 370–71 (D.C. Cir. 2013).

Wabash then filed a second petition for review.  We have jurisdiction over both petitions under 16 U.S.C. § 825*l*(b).

## II

We review FERC orders under the Administrative Procedure Act, which requires us to set aside decisions that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A); *see La. Pub. Serv. Comm'n v. FERC*, 10 F.4th 839, 845 (D.C. Cir. 2021).  We defer to the Commission's reasonable interpretation of ambiguous contracts within its jurisdiction.  *Seminole Elec. Coop., Inc. v. FERC*, 861 F.3d 230, 234 (D.C. Cir. 2017).

FERC's decision to reject the 2020 contracts rested on its conclusion that rates established under the contracts are not entitled to the *Mobile-Sierra* presumption and its refusal to

apply the presumption as a matter of discretion. Before us, Wabash challenges only the former conclusion. "Whether [the] *Mobile-Sierra* doctrine applies" to a given rate "is a question of contract interpretation." *Union Pac. Fuels, Inc. v. FERC*, 129 F.3d 157, 161 (D.C. Cir. 1997). So we will uphold the Commission's decision as long as it reflects a reasonable view of the contracts.

The *Mobile-Sierra* doctrine applies to "contractually negotiated rates," not "prescriptions of general applicability." *NRG Power*, 558 U.S. at 176 (cleaned up). To trigger the presumption, a contract must "set firm rates or establish a specific methodology for setting the rates for service." *Dominion Transmission, Inc. v. FERC*, 533 F.3d 845, 852–53 (D.C. Cir. 2008) (cleaned up). Thus, a contract requiring the purchaser to pay a utility's "going rate" on file with FERC, without more, does not eliminate review under the ordinary just-and-reasonable standard. *See United Gas Pipe Line Co. v. Memphis Light, Gas & Water Div.*, 358 U.S. 103, 110–13 (1958).

The 2020 contracts purport to require the *Mobile-Sierra* presumption to apply to any changes to the Formulary Rate Tariff. If its rates count as contractually negotiated, then FERC had no basis to reject contracts for invoking the presumption. On the other hand, if its rates count as generally applicable, then FERC was not required to apply the presumption.

FERC reasonably determined that the 2020 contracts do not set a contractually negotiated rate. Under the *Mobile-Sierra* doctrine, the key question is whether rates are set bilaterally or unilaterally. *Morgan Stanley*, 554 U.S. at 532. Here, the governing contracts give the Wabash board broad discretion to raise rates unilaterally: The board may approve rates that it believes are necessary to cover Wabash's expenses

and to maintain a reasonable profit margin, which is what any utility filing a unilateral tariff rate may seek to do. *See id.* Moreover, because the board acts by simple majority, it may approve rates over the objections of dissenting members. Each member controls only four percent of the votes of Wabash's board; as Wabash acknowledges, that leaves them with "very small bargaining power relative to the joint venture." Oral Arg. Audio 6:49. Furthermore, Wabash's contracts with individual members are virtually identical. These considerations suggest that individual members face a "binary," take-it-or-leave-it choice. *See Tri-State*, 170 FERC ¶ 61,221, P 48. In contrast, the *Mobile-Sierra* doctrine assumes that wholesale buyers and sellers enjoy "presumptively equal bargaining power" and thus may be "expected to negotiate a just and reasonable rate as between the two of them." *Morgan Stanley*, 554 U.S. at 545 (cleaned up). For these reasons, FERC reasonably concluded that rates set under the 2020 contracts would be more akin to a generally applicable going rate than to a contractual rate freely negotiated between individual parties with comparable bargaining power.

Wabash objects that its rate changes are not unilateral because member utilities control the board. But as explained above, FERC could reasonably conclude that no one member has significant bargaining power vis-à-vis the entire cooperative. Moreover, as this dispute illustrates, the interests of individual members may diverge. And if anything, the distinctive features of the relationship between a cooperative and its members warrant more scrutiny in this context, not less. Individual members collectively own the cooperative. As owners, they stand to benefit from higher prices charged by Wabash and then passed on to retail customers. The individual utilities thus lack the same incentive as a buyer negotiating with an unrelated seller for the lowest possible prices. In other words, the utilities are effectively on both sides of the

transaction. And the *Mobile-Sierra* presumption applies only to rates that are "the product of adversarial negotiations between sophisticated parties pursuing independent interests." *Okla. Gas & Elec. Co. v. FERC*, 827 F.3d 75, 79–80 (D.C. Cir. 2016).

Wabash further argues that contracts freely negotiated are entitled to the *Mobile-Sierra* presumption even if they contain no individually negotiated terms. But as we have explained, the absence of individual terms tends to support FERC's conclusion that the buyers here lacked the degree of bargaining power necessary to trigger the presumption. On rehearing, FERC invoked administrative precedents broadly stating that a contract must contain individualized terms to enjoy the presumption. *See* 172 FERC ¶ 61,177, P 14 n.25. However, we do not read FERC's decision as resting on a *per se* rule that the presumption can never apply to form contracts, and we do not opine on such a sweeping rule. We simply conclude that, in this case, the small bargaining power of any individual member relative to the cooperative plus the highly standardized nature of the governing contracts supports FERC's conclusion that the contracts impose a unilateral tariff rate as opposed to a freely negotiated bilateral contract rate.

III

The Commission reasonably rejected Wabash's new contracts. We therefore deny the petitions for review.

*So ordered.*